# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00191-CV

**Cleve Foster and Humberto Leal, Appellants**

**v.**

**Texas Department of Criminal Justice, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-11-000917, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

---

&

## NO. 03-11-00287-CV

**Cleve Foster, Humberto Leal and Clint Broden, Appellants**

**v.**

**Texas Department of Criminal Justice, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-11-000917, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

---

## O P I N I O N

The Texas Legislature has mandated that a sentence of death is to be carried out by

lethal injection under an "execution procedure to be determined and supervised" by the director of

the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID). Tex. Code Crim. Proc. Ann. art. 43.14 (West Supp. 2010). The director has adopted a written "Execution Procedure," roughly ten pages in length, that addresses, among other matters, the contents of the lethal injection and the manner in which it is to be administered. The singularly dispositive issue in these consolidated appeals is whether the current Execution Procedure is exempted from the Administrative Procedure Act's (APA's) coverage by the following provision:

> This chapter [2001 of the government code, the APA] does not apply to a rule or internal procedure of the Texas Department of Criminal Justice or Texas Board of Criminal Justice that applies to an inmate or any other person under the custody or control of the department or to an action taken under that rule or procedure.

Tex. Gov't Code Ann. § 2001.226 (West 2008). We conclude that this provision, APA section 2001.226, unambiguously exempts the Execution Procedure from the APA.

The underlying dispute centers on a recent change to the drug protocol specified in the Execution Procedure. Previously, evidently for several years, the Execution Procedure had called for injection of three drugs in sequence: (1) sodium thiopental (also known as sodium pentothal), an anesthetic; (2) pancuroniam bromide, a paralytic agent; and (3) potassium chloride, which stops the heart. However, after the sole American manufacturer of sodium thiopental announced that it was ceasing production, the TDCJ-CID director adopted a new Execution Procedure on March 15, 2011 (the March 2011 Execution Procedure) that substituted a different anesthetic, pentobarbital. This change prompted appellants Cleve Foster and Humberto Leal—both TDCJ-CID inmates who have been convicted of capital murder and sentenced to death—and appellant Clint Broden—a lawyer for Foster—to sue appellee TDCJ in an effort to challenge the March 2011 Execution

2

Procedure.[1]   Invoking the cause of action and waiver of sovereign immunity provided in APA section 2001.038,[2] appellants sought declarations that the March 2011 Execution Procedure (1) constituted a "rule" under the APA[3] (2) that must be declared void because TDCJ-CID had not followed the APA's notice-and-comment rulemaking procedures when adopting it.[4]  Additionally, citing impending execution dates—Foster's was then scheduled for April 5, 2011, while Leal's was (and still is) scheduled for July 7, 2011—appellants requested a temporary restraining order and temporary injunction to preserve the status quo until the district court could consider the merits of their declaratory claims.

TDCJ filed a plea to the jurisdiction and response to the requests for injunctive relief. Of relevance to this appeal, TDCJ asserted that the district court lacked subject-matter jurisdiction for two reasons.  First, it urged that its sovereign immunity from suit was not waived by

---

[1]  Foster and Leal filed the original petition.  Broden subsequently joined the suit via supplemental petition filed on the same day as, and a few hours before, the April 1 hearing that is discussed below.

[2]  *See* Tex. Gov't Code Ann. § 2001.038(a) (West 2008) (providing that "[t]he validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff"); *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.) ("section 2001.038 is a grant of original jurisdiction and, moreover, waives sovereign immunity").

[3]  *See* Tex. Gov't Code Ann. § 2001.003(6) (West 2008) ("rule" under APA "(A) means a state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency; (B) includes the amendment or repeal of a prior rule; and (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures").

[4]  *See id.* §§ 2001.023-33, .035; *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008).

APA section 2001.038 because APA section 2001.226 exempted the March 2011 Execution Procedure from the Act's coverage. Second, TDCJ contended that the effect of the injunctive relief sought by the plaintiffs would be to enjoin executions, a remedy over which the Court of Criminal Appeals has exclusive jurisdiction. *See State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389, 392-96 (Tex. Crim. App. 2004).

A hearing was held on April 1, 2011, at which the district court, with the parties' agreement, addressed both appellants' TRO request and their request for a temporary injunction. At the conclusion of the hearing, the district court denied both requests. Foster and Leal filed a notice of appeal from the district court's order denying the temporary injunction,[5] which we docketed as Cause No. 03-11-00191-CV. Additionally, citing his approaching April 5 scheduled execution date, Foster requested that this Court grant an immediate stay of his execution to preserve our jurisdiction over his appeal. We denied emergency relief in an order citing both APA section 2001.226 and *State ex rel. Holmes*.[6] Before Foster's execution was carried out, however, the United States Supreme Court granted a temporary stay on other grounds. Although the Supreme Court subsequently lifted its stay, the parties advise us that a new execution date for Foster has not yet been scheduled.

While Cause No. 03-11-00191-CV remained pending in this Court, appellants filed a first amended petition in district court adding alternative declaratory and injunctive claims

---

[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2008). Broden was not named as an appellant.

[6] *Foster v. Texas Dep't of Crim. Justice*, No. 03-11-00191-CV, 2011 Tex. App. LEXIS 2653 (Tex. App.—Austin Apr. 4, 2011) (order).

4

asserting that even if some portions of the March 2011 Execution Procedure were exempted from the APA by section 2001.226, other provisions—including the revised drug protocol—were not, such that APA section 2001.038 waived sovereign immunity to the extent their suit challenged those non-exempted provisions. A hearing on these new injunctive claims and TDCJ's plea to the jurisdiction was held on April 27. At the conclusion of the hearing, the district court denied appellants' second request for injunctive relief, granted TDCJ's plea to the jurisdiction, and rendered judgment dismissing appellants' suit for want of subject-matter jurisdiction. Appellants filed a notice of appeal from this final judgment, which we docketed as Cause No. 03-11-00287-CV.

On appellants' motion, we consolidated the two pending appeals. Furthermore, in light of Leal's July 7 scheduled execution and the likelihood that appellants may seek additional appellate remedies in advance of that date, we have expedited briefing and submission of the case.[7]

Although the district court's orders on appeal do not elaborate on the grounds for its rulings, nor were there findings of fact and conclusions of law prepared or requested, the parties concur that the validity of all of the orders rests, in the first instance, on construction of APA section 2001.226 and its application to the March 2011 Execution Procedure.[8] If section 2001.226 exempts the Procedure from the APA, both sides recognize, APA section 2001.038 would not waive TDCJ's sovereign immunity from suit, the district court would lack subject-matter

_____

[7] The parties waived oral argument. Pursuant to Tex. R. App. P. 2, we have suspended the pre-submission notice requirements, *see* Tex. R. App. P. 39.8, and submitted the case on briefs immediately upon receiving TDCJ's appellee's brief.

[8] Additionally, although not controlling our standard of review as a formal matter, we note that the reporter's record from the April 1 hearing reflects the district court's view that "[it] does not have jurisdiction. There's no waiver of sovereign immunity under 2001.038, based on the plain language of 2001.226."

5

jurisdiction, and the court would have acted properly in dismissing the suit and denying any relief that appellants requested. The parties also agree that the March 2011 Execution Procedure is a "rule" under the APA and that, with respect to section 2001.226 in particular, is "a rule . . . of the Texas Department of Criminal Justice." Tex. Gov't Code Ann. § 2001.226. Their dispute on appeal centers on whether this rule "applies to an inmate or any other person under the custody or control of the department" within the meaning of section 2001.226. *See id.*

Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *See id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284). We consider the words in context, not in isolation. *See State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). We also presume that the Legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We further presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.).

6

In their first of four issues, appellants argue that "a rule . . . of the Texas Department of Criminal Justice . . . that applies to an inmate or any other person under the custody or control of the department," as provided in APA section 2001.226, is limited solely to TDCJ's policies and procedures relating to inmate grievances. While acknowledging that "the language of Section 2001.226 appears at first glance" to sweep far more broadly, appellants nonetheless urge that "legislative history" of the provision compels a narrower construction. In support, appellants reference documentary legislative history indicating that APA section 2001.226 originated as an amendment to legislation addressed to TDCJ's inmate grievance processes. Appellants also emphasize remarks by the amendment's author to the effect that the proposal would exclude TDCJ's inmate grievance procedures from the APA. In addition, appellants, citing what they perceive to be the APA's more general policy goal to foster public participation and "transparency" in agency rulemaking, urge that we must construe the Act "liberally" to that end.[9]

Especially in recent times, the Texas Supreme Court has been resolute that courts must construe statutes by "first looking to the statutory language for the Legislature's intent, and only if we cannot discern legislative intent in the language of the statute itself do we resort to canons of construction or other aids." *Texas Lottery Comm'n*, 325 S.W.3d at 637. Consequently, we do not, as appellants propose, begin with the legislative record (much less with the anecdotal remarks

---

[9] Appellants also purport to rely upon "judicial construction" of APA section 2001.226 that supports their view of the statute. They cite dicta in *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 197 (Tex. 2004), that alludes to the legislative origins of section 2001.226, as well as decisions that have applied section 2001.226 in the context of inmate suits limited to challenging TDCJ disciplinary procedures and actions. Contrary to appellants' assertions, none of these "judicial constructions" of section 2001.226 provide authority or guidance regarding whether or how the provision applies to the Execution Procedure.

7

of individual legislators that may appear within it), divine some perceived "legislative intent" or "policy goal," and then work backwards to construe the statutory text accordingly. *See id.*; *see also Molinet v. Kimbrell*, 2011 Tex. LEXIS 68, at * 6 (Tex. Jan. 21, 2011) (declining to "consider and give overriding weight to statements made by a senator during floor debates and published by unanimous consent in the Senate Journal" because "[s]tatements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute").

APA section 2001.226 unambiguously exempts from the APA "a rule . . . of the Texas Department of Criminal Justice . . . that applies to an inmate or any other person under the custody or control of the department," not just TDCJ's rules relating to inmate grievances. *See* Tex. Gov't Code Ann. § 2001.226. Appellants can achieve the construction they desire only by adding words to the statute that the Legislature did not itself choose to include. *See Texas Lottery Comm'n*, 325 S.W.3d at 637 (we presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully). We are not free to rewrite the statute in the guise of construing it. *Stockton v. Offenbach*, No. 09-0466, 2011 Tex. LEXIS 128, at *22 (Tex. Feb. 25, 2011). Accordingly, we overrule appellants' first issue.

In their second issue, presented as an alternative to their first, appellants argue that "a rule . . . of the Texas Department of Criminal Justice . . . that applies to an inmate or any other person under the custody or control of the department," as provided in APA section 2001.226, applies solely to the portions of the March 2011 Execution Procedure that "require some active participation by an inmate" or at least "involve an inmate." The central premise of both arguments

8

is that some provisions of the Procedure are addressed to the conduct or procedures of TDCJ-CID or its staff and therefore, appellants reason, cannot "appl[y] to an inmate" under the meaning of section 2001.226. In appellants' view, furthermore, the new drug protocol, as well as provisions relating to the training and qualifications of the TDCJ-CID "Drug Team" that administers the lethal injection, are among the portions of the Procedure that govern TDCJ-CID rather than inmates and, accordingly, fall outside section 2001.226. Relatedly, in their third issue, appellants urge that because these two sets of provisions are essential elements of the March 2011 Execution Procedure as a whole, they cannot be severed from other provisions that fall within APA section 2001.226, rendering the entirety of the Procedure subject to challenge under APA section 2001.038 and invalid. *See Texas Dep't of Banking v. Restland Funeral Home, Inc.*, 847 S.W.2d 680, 682 (Tex. App.—Austin 1993, no writ). We need go no further than to hold that the March 2011 Execution Procedure—including its provisions relating to the drug protocol and the qualifications and training of the personnel administering the lethal injection—are "applied" to a death-row inmate, under any ordinary meaning of the term, by implementing the process by which he or she will be executed.[10] Appellants' arguments to the contrary seek, again, to rewrite APA section 2001.226 in the guise of construing it. *See Offenbach*, 2011 Tex. LEXIS 128, at \*22; *see also Texas Lottery Comm'n*, 325 S.W.3d at 640 ("when the language of a statute is clear, it is not the judicial prerogative to go behind or around that language through the guise of construing it

---

 **10** *See* Webster's Third New International Dictionary 105 (2002) (defining "apply" as "to have a valid connection, agreement, or analogy : have a bearing : be pertinent").

to reach what the parties or we might believe is a better result"). We overrule appellants' second and third issues.

In their fourth and final issue, appellants argue that the district court erred to the extent it denied their two requests for temporary injunction on the basis that such relief would implicate the court of criminal appeals's exclusive jurisdiction over appellate issues related to executions. *See State ex rel. Holmes*, 885 S.W.2d at 392-96. This contention is unnecessary to reach here in light of our preceding holdings. *See* Tex. R. App. P. 47.1. Because APA section 2001.226 exempted the March 2011 Execution Procedure from the requirements of that act, appellants could not invoke APA section 2001.038's waiver of sovereign immunity. Because sovereign immunity thus deprived the district court of subject-matter jurisdiction over appellants' suit, it follows that the court lacked jurisdiction to grant appellants any injunctive relief.

We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: June 10, 2011

10