# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00373-CV

**David Lightfoot Hernández, Appellant**

**v.**

**Texas Department of Criminal Justice, Parole Division, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-12-000960, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant David Lightfoot Hernández, an inmate in the Texas Department of Criminal Justice (TDCJ), appeals a final judgment dismissing, on a plea to the jurisdiction, a claim he asserted against TDCJ. In a single issue, Hernández complains that the district court erred in granting TDCJ's plea. We will affirm the district court's judgment.

## BACKGROUND

Hernández is currently serving three forty-year sentences for the offenses of aggravated sexual assault, aggravated sexual assault with a deadly weapon, and burglary of a habitation with a deadly weapon.[1] He was convicted in 1987 and, in 2002, was initially released on

---

[1] We derive our factual summary from Hernández's live petition and evidence he attached. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). The relevant evidence consists chiefly of copies or partial copies of the two "Certificates of Mandatory Supervision" we will discuss shortly.

mandatory supervision. Among the parole conditions TDCJ imposed was one known as "Special Condition X," essentially an intensive regime of sex-offender treatment and counseling. Hernández attributes legal significance to the fact that Special Condition X appears in two "Certificates of Mandatory Supervision" he received from TDCJ, the first of which was issued upon his release, which occurred on January 7, 2002, and the second in January 2003.[2]

In 2007, Hernández's parole was revoked and he was returned to TDCJ custody, where he remains today. Hernández alleges, and TDCJ does not dispute, that his parole was revoked on the ground that he had failed to comply with Special Condition X. In April 2012—roughly five years after his parole was revoked—Hernández filed the underlying suit against TDCJ challenging the validity of Special Condition X as a basis for his parole revocation. Specifically, he complains that, at least as of the time TDCJ issued its two Certificates of Mandatory Supervision to him, which he views as the moments in time at which Special Condition X was "imposed" upon or "applied" to him, Special Condition X was "not law" because TDCJ had not yet "promulgated" it. Hernández's factual premise is apparently derived from a federal court decision, addressing a different and unrelated challenge to Special Condition X, in which the court, surveying the historical origins of the condition, noted that TDCJ "first promulgated a Parole Division Policy and Operation Procedure (PD/POP) that included special condition X in July 2003."[3]

---

[2] Although the record is not entirely clear, it suggests that TDCJ issued the second "Certificate of Mandatory Supervision" in the course of implementing a new electronic record-keeping system known as the Offender Information Management System (OIMS).

[3] *Jennings v. Owens*, 585 F. Supp. 2d 881, 885 (W.D. Tex. 2008), *rev'd*, 602 F.3d 652 (5th Cir. 2010).

From this factual premise, Hernández extrapolates that his claim falls within the cause of action created by section 2001.038 of the Administrative Procedure Act (APA)[4] and purports to seek a declaration that Special Condition X is an invalid "rule" as it has been applied to him.[5] However, Hernández acknowledges in his petition that TDCJ ultimately "promulgated" Special Condition X in July 2003, as the federal court observed, and that his parole was not revoked until 2007. Nonetheless, Hernández reasons that because Special Condition X had not been "promulgated" and was not yet "law" at the time TDCJ "imposed" it on him—i.e., when it issued him the Certificate of Mandatory Supervision in January 2002 or, at the latest, when it issued the second certificate in January 2003—Special Condition X had remained invalid or void as to him through the time of his revocation.[6]

TDCJ interposed a plea to the jurisdiction, asserting that, in substance, sovereign immunity barred Hernández's suit because he could not assert any viable claim under APA section 2001.038. Following a hearing at which only argument was presented, the district court granted TDCJ's plea in full and dismissed Hernández's suit for want of subject-matter jurisdiction. It is from this judgment that Hernández appeals, insisting that he properly invoked the district court's subject-matter jurisdiction via section 2001.038.

---

[4] *See* Tex. Gov't Code § 2001.038 (authorizing "an action for declaratory judgment" against a state agency to determine "[t]he validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.").

[5] *Cf. id.* §§ 2001.003(6) (APA's definition of a "rule"), .021-.034 (APA's rule-making procedures), .035 (providing that a "rule" is voidable if not adopted in substantial compliance with APA's rule-making procedures).

[6] Hernández has not alleged or presented proof that his parole was revoked based on violations of Special Condition X that occurred prior to July 2003.

**STANDARD OF REVIEW**

A plea to the jurisdiction is among the appropriate procedural mechanisms for challenging a trial court's authority to decide the subject matter of a specific cause of action.[7] Whether this authority exists turns in the first instance on the content of the claimant's live pleadings,[8] but evidence relevant to the jurisdictional issue may also be considered.[9] Our ultimate inquiry is whether a claimant has presented facts that affirmatively demonstrate the trial court's subject-matter jurisdiction, and that is a question of law that we review de novo.[10] If the claimant fails to allege or present evidence of sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also fails to affirmatively demonstrate incurable defects in jurisdiction, the claimant should be afforded the opportunity to amend.[11] If, on the other hand, the pleadings or evidence affirmatively negate the existence of jurisdiction, the suit should be dismissed without affording the claimant an opportunity to amend.[12]

---

[7] *See Miranda*, 133 S.W.3d at 225-26.

[8] *Id*. at 226. The claimant has the initial burden of alleging facts that would affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id*. (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Mere unsupported legal conclusions do not suffice. *See Creedmoor–Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 & nn.7 & 8 (Tex. App.—Austin 2010, no pet.). We construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226.

[9] *See id*. at 223-24; 226-27; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *see also Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.).

[10] *See Miranda*, 133 S.W.3d at 226; *Creedmoor–Maha*, 307 S.W.3d at 513, 516 & n.8.

[11] *See Miranda*, 133 S.W.3d at 226-27.

[12] *See id*. at 227.

Having asserted a claim against TDCJ, as Hernández seems to recognize, sovereign immunity is a key hurdle he must overcome in order to establish the district court's subject-matter jurisdiction. Absent legislative waiver, sovereign immunity deprives Texas courts of subject-matter jurisdiction to adjudicate any suit against the State or its agencies or subdivisions.[13] Accordingly, Hernández purports to rely on APA section 2001.038, which waives or overcomes sovereign immunity to the extent of authorizing "an action for declaratory judgment" against a state agency to determine "[t]he validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."[14] Consequently, the key jurisdictional question we must resolve is whether Hernández has presented facts that would invoke the district court's subject-matter jurisdiction under section 2001.038 to issue a declaration regarding the "validity or applicability of a rule," which include: (1) a "rule" (as defined under the APA), (2) that is alleged to "interfere[] with or impair[], or threaten[] to interfere with or impair," (3) "a legal right or privilege" of Hernández.[15]

Because jurisdiction cannot be waived, and may be challenged for the first time on appeal, or even sua sponte, we are not confined to the specific grounds or arguments that TDCJ presented in its plea to the jurisdiction or appellate briefing.[16]

---

[13] *See, e.g.*, *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620-21 (Tex. 2011) (per curiam); *Bacon*, 411 S.W.3d at 172.

[14] Tex. Gov't Code § 2001.038(a), (c); *see Bacon*, 411 S.W.3d at 178.

[15] *See* Tex. Gov't Code § 2001.038(a); *Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 543-48 (Tex. App.—Austin 2011, pet. denied).

[16] *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95-96 (Tex. 2012); *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 707 n.18 (Tex. App.—Austin 2013, no pet.) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446).

**ANALYSIS**

Hernández's own pleadings affirmatively negate the district court's jurisdiction. Leaving aside other potential jurisdictional flaws in his attempted use of APA section 2001.038,[17] it is immediately apparent that Hernández has not, and cannot, allege the facts that constitute a cause of action under that statute. Even if Special Condition X would otherwise constitute a "rule" within the APA,[18] the Legislature has exempted from the APA's requirements "a rule or internal procedure of [TDCJ] . . . that applies to an inmate or any other person under the custody or control of the department or to an action taken under that rule or procedure."[19] Moreover, as TDCJ emphasizes, section 2001.223 of the APA makes section 2001.038 inapplicable "to . . . a hearing or interview conducted by the Board of Pardon and Paroles or [TDCJ] relating to the grant, rescission, or revocation of parole or other form of administrative release."[20] Although he attempts to suggest otherwise, Hernández's sole allegation of current or ongoing interference with or impairment of a "legal right or privilege" of his by Special Condition X, as required to invoke jurisdiction under section 2001.038, is the revocation of his parole based on Special Condition X in 2007. In sum, as a matter of law, there is not, and cannot be, any "rule," as defined in the APA, that allegedly

---

[17] E.g., whether Hernández can use section 2001.038 as an alternative to the review process provided by the Board of Pardons and Paroles, *see* 37 Tex. Admin. Code § 146.11 (2013) (Tex. Bd. of Pardons & Paroles, Releasee's Motion to Reopen Hearing or Reinstate Supervision), .12 (Procedure after Motion to Reopen Is Granted; Time; Rights of the Releasee, Final Disposition), and, more generally, whether section 2001.038 can be applied retroactively to effectively "undo" a prior administrative decision. *Cf. Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123-24 (Tex. App.—Austin 2007, no pet.).

[18] *See, e.g., Slay*, 351 S.W.3d at 543-48.

[19] Tex. Gov't Code § 2001.226.

[20] *Id*. § 2001.223(3).

"interferes with or impairs, or threatens to interfere with or impair" any "legal right or privilege" of Hernández, and even if there could be, no action would lie under section 2001.038. Either way, Hernández has pled facts affirmatively demonstrating that his claim falls outside section 2001.038 and that sovereign immunity, accordingly, bars it.[21]

Additionally, Hernández's own pleadings affirmatively demonstrate that his claim is moot. As noted, Hernández acknowledges that TDCJ "promulgated" Special Condition X effective July 2003. This effectively cured, from that point forward, the alleged procedural defect made the basis of Hernández's claim. Hernández's parole was not revoked until 2007. At that juncture, any complaints about alleged procedural flaws in Special Condition X were long since moot.[22] For a court to have subject-matter jurisdiction, there must be a live controversy between the parties.[23]

---

[21] *See Foster v. Texas Dep't of Criminal Justice*, 344 S.W.3d 543, 547-48 (Tex. App.—Austin 2011, pet. denied) (holding sovereign immunity barred purported claim against TDCJ under APA section 2001.038 because section 2001.226 exempted challenged execution procedures from Act's coverage); *Bohannan v. Texas Bd. of Criminal Justice*, 942 S.W.2d 113, 117 (Tex. App.—Austin 1997, writ denied) (regarding section 2001.226, observing that "[t]his provision effectively precludes [inmate's] challenge to the substance of the rule under section 2001.038 and whatever procedural defects may have occurred under the APA.").

[22] *See Texas Dep't of Transp. v. Texas Weekly Advocate*, No. 03-09-00159-CV, 2010 WL 323075, at *2 (Tex. App.—Austin Jan. 29, 2010, no pet.) (mem. op.) (holding claims under section 2001.038 of APA premised on agency's failure to follow APA's rulemaking procedure were mooted when agency completed rulemaking process during pendency of appeal).

[23] *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) (citing *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993)); *see also* Tex. Const. art. II, § 1.

**CONCLUSION**

Having concluded that the district court lacked subject-matter jurisdiction over Hernández's suit, we affirm the district court's judgment granting TDCJ's plea and dismissing the suit.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: February 19, 2014