ACCEPTED
03-15-00113-CV
6486239
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/13/2015 2:31:09 PM
JEFFREY D. KYLE
CLERK



## KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/13/2015 2:31:09 PM
JEFFREY D. KYLE
Clerk

RANCE CRAFT
ASSISTANT SOLICITOR GENERAL

(512) 936-2872
RANCE.CRAFT@TEXASATTORNEYGENERAL.GOV

August 13, 2015

Mr. Jeffrey D. Kyle, Clerk          **Via File & Serve Xpress**
Third Court of Appeals
P.O. Box 12547
Austin, Texas 78711-2547

    Re: *EMC Corporation v. Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas,* No. 03-15-00113-CV

Dear Mr. Kyle:

Appellees Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas, provide this notice that the Court recently released an opinion in another appeal that disposes of what Appellant EMC Corporation accurately describes as "[t]he central question in this case." Appellant's Br. 1.

On July 28, 2015, the Court issued its decision in *Graphic Packaging Corp. v. Hegar*, No. 03-14-00197-CV, 2015 WL 4603683 (Tex. App—Austin July 28, 2015, no pet. h.) (copy attached). The deadline for filing a motion for rehearing or a motion for reconsideration en banc was August 12, 2015. TEX. R. APP. P. 49.1, 49.7. Neither motion was filed by that date.

In *Graphic Packaging*, the Court "conclude[d] that a taxpayer may not use the three-factor formula in chapter 141 [of the Tax Code] to apportion its margin to Texas for franchise tax purposes." *Graphic Packaging*, 2015 WL 4603683, at *1. The Court reasoned that the franchise tax does not fall within chapter 141's definition of an "income tax," which is the only kind of tax to which that chapter's apportionment formula applies. *Id.* at *3-*7.

The holding in *Graphic Packaging* resolves EMC's third issue in the Comptroller's favor and makes it unnecessary for the Court to reach EMC's first

and second issues.  *See* Appellant's Br. 2; *Graphic Packaging*, 2015 WL 4603683, at *7 n.5.

       Please distribute this letter to the Justices of the panel assigned to this case. Thank you for your assistance with this matter.

                  Sincerely,

                  /s/ Rance Craft

                  Rance Craft
                  Assistant Solicitor General
                  Texas Bar No. 24035655

RLC/vlc

cc:     Doug Sigel (*via File & Serve Xpress*)


--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RE-
LEASED FOR PUBLICATION IN THE PERMA-
NENT LAW REPORTS. UNTIL RELEASED, IT IS
SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
Austin.
**Graphic** Packaging Corporation, Appellant
v.
Glen Hegar, Comptroller of Public Accounts of The
State of Texas; and Ken Paxton, Attorney General of
The State of Texas, Appellees

NO. 03–14–00197–CV
Filed: July 28, 2015

**FROM THE DISTRICT COURT OF TRAVIS
COUNTY, 353RD JUDICIAL DISTRICT NO.
D–1–GN–12–003038, HONORABLE STEPHEN
YELENOSKY, JUDGE PRESIDING**
James F. Martens, Amanda G. Taylor, Danielle V.
Ahlrich, Lacy L. Leonard, Martens Todd Leonard
Taylor & Ahlrich, Austin, TX, Edwin P. Antolin, Amy
L. Silverstein, Silverstein & Pomerantz, LLP, San
Francisco, CA, for Appellant.

Cynthia A. Morales, Assistant Attorney General,
Rance Craft, Office of the Attorney General, Austin,
TX, for Appellees.

Before Chief Justice Rose, Justices Goodwin and
Field

**OPINION**
Melissa Goodwin, Justice
**\*1** This appeal presents the issue of how a tax-

payer apportions the share of its taxable margin to its
Texas operations for franchise tax purposes. Accord-
ing to the Comptroller of Public Accounts and the
Attorney General (collectively the Comptroller), a
taxpayer may not use the three-factor formula in
chapter 141 of the Tax Code, the Multistate Tax
Compact, for franchise tax purposes but must use the
single-factor formula in section 171.106(a) of the Tax
Code. *See* Tex. Tax Code §§ 141.001, arts. III, IV,
171.106(a). [FN1] Facing cross-motions for summary
judgment on this issue, the district court ruled in favor
of the Comptroller. Because we conclude that a tax-
payer may not use the three-factor formula in chapter
141 to apportion its margin to Texas for franchise tax
purposes, we affirm the district court's judgment.

> FN1. References in this opinion to chapters
> 141 and 171 are to those chapters in the Tax
> Code.

**BACKGROUND**
Graphic Packaging Corporation is a corporation
headquartered in Marietta, Georgia that sells packag-
ing for consumer products throughout the United
States. Because Graphic operates in multiple states
including Texas, the amount of its Texas franchise tax
liability is assessed and apportioned based on its
"taxable margin" attributable to Texas. *See id.* §§
171.002(a) (setting rate of franchise tax as percent of
taxable margin), .101 (stating alternatives for deter-
mining taxable margin), .106 (stating alternatives for
determining apportionment of margin to Texas); *see
also id.* § 171.001(a) (imposing Texas franchise tax
against "each taxable entity that does business in this
state or that is chartered or organized in this state");
*Combs v. Newpark Res., Inc.,* 422 S.W.3d 46, 47–8
(Tex.App.–Austin 2013, no pet.) (describing structure
and formula for calculating franchise tax, which is
"tax on the value and privilege of doing business in
Texas" (citing *In re Nestle USA, Inc.,* 387 S.W.3d 610,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

612 (Tex.2012) (orig.proceeding)).

When it initially filed its 2008 and 2009 Texas franchise tax reports, Graphic apportioned its margin to Texas using the single-factor formula in section 171.106(a):

Except as provided by this section, a taxable entity's margin is apportioned to this state to determine the amount of tax imposed under Section 171.002 by multiplying the margin by a fraction, the numerator of which is the taxable entity's gross receipts from business done in this state, as determined under Section 171.103, and the denominator of which is the taxable entity's gross receipts from its entire business, as determined under Section 171.105.

Tex. Tax Code § 171.106(a); *see also id.* §§ 171.002, .103 (describing calculation for determining gross receipts from business done in Texas for margin), .105 (describing calculation for determinating gross receipts from entire business for margin). The single-factor formula multiplies a taxpayer's margin by a gross-receipts fraction, which generally is the taxpayer's gross receipts from its business conducted in Texas divided by its gross receipts from the taxpayer's total business. *Id.* § 171.106(a); *see id.* §§ 171.101, .1011–.1013 (addressing components of margin determination).

**\*2** On its 2010 Texas franchise tax report, Graphic apportioned its margin to Texas differently using the three-factor formula in article IV of section 141.001. *See id.* § 141.001, arts. III.1, IV. This formula equally weighs property, payroll, and sales factors. *See id.* art. IV.9 (apportioning "[a]ll business income ... to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three"). Graphic also filed refund claims and amended franchise tax reports for the 2008 and 2009 tax report years, seeking a refund based on its election to apportion its margin to Texas based on the three-factor formula. *Id.; see id.* § 111.104 (addressing refund claims). Graphic does not own or operate any manufacturing operations in Texas and only engages in retail and wholesale activities in Texas. Thus, applying the three-factor formula that includes payroll and property factors as well as a sales factor reduced its franchise tax liability lower than the single-factor formula of chapter 171 would have yielded.

The Comptroller concluded that Graphic was required to use the single-factor formula in section 171.106(a), then denied Graphic's refund claims and assessed additional franchise tax, penalty, and interest for under-reporting in the 2010 tax report year. *See id.* § 171.106(a). Graphic requested hearings as to the amount of its franchise tax liabilities for the 2008 to 2010 tax report years, and the hearings were combined. The Comptroller upheld the assessment against Graphic for the 2010 tax report year and the denial of Graphic's refund claims. After the Comptroller denied Graphic's motion for rehearing, Graphic paid the 2010 assessment under protest and filed this combined refund and tax-protest suit against the Comptroller. *See id.* §§ 112.052 (authorizing taxpayer suit after payment under protest), .151 (authorizing taxpayer suit for refund).

In its petition, Graphic brought four separate "counts" to support its claims for the 2008 to 2010 tax report years. It asserted that (i) it properly elected chapter 141's three-factor formula to apportion its margin to Texas for franchise tax purposes; (ii) the franchise tax's single-factor formula, as applied to Graphic, violates the United States Constitution; (iii) the franchise tax's rate structure, as applied to Graphic, violates the United States Constitution; and (iv) alternatively, the Comptroller abused his discretion in failing to waive penalties and interest.

Graphic moved for summary judgment on its first ground, and the Comptroller filed a response and a

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

cross motion for partial summary judgment as to that ground. Consistent with the administrative proceedings and prior decisions, the Comptroller contended that Graphic was required to apportion its margin to Texas using the single-factor formula in section 171.106(a). *See id.* § 171.106(a); *see, e.g.,* Texas Comptroller of Pub. Accounts, SOAH No. 304–13–2728.13, 2013 WL 4508906, at *1–3 (June 7, 2013) (citing prior decisions by Comptroller and requiring claimant to use single-factor formula in section 171.106(a) to apportion its margin to Texas for tax report years 2008 to 2011); *see also* 34 Tex. Admin. Code § 3.591(c) (Comptroller of Pub. Accounts, Margin: Apportionment) (tracking language of section 171.106(a) to describe apportionment formula for franchise tax purposes).

The district court granted the Comptroller's partial motion for summary judgment and denied Graphic's motion for summary judgment without providing its reasoning. Graphic non-suited its constitutional and alternative claims, and the district court rendered final judgment. This appeal followed.

### ANALYSIS

Graphic brings three issues challenging the district court's summary judgment ruling in favor of the Comptroller. Graphic contends that it properly elected to use the three-factor formula in chapter 141 to apportion its margin to Texas because: (i) section 171.106(a) did not impliedly repeal chapter 141's election and formula; (ii) if section 171.106(a) did impliedly repeal chapter 141's election and formula, the repeal was invalid because the Multistate Tax Compact is an interstate agreement that is binding on the party states unless and until they withdraw, and (iii) if chapter 141's election and formula were not repealed, "the Texas franchise tax is an 'income tax' as defined to be within the scope of the [Multistate Tax] Compact's applicability."

### Standard of Review

**\*3** We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). If the trial court does not specify the grounds for its summary judgment, we must affirm the summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003).

Graphic's issues also concern statutory construction, a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs,* 258 S.W.3d 627, 631 (Tex.2008). Our primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha,* 290 S.W.3d 863, 867 (Tex.2009). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott,* 309 S.W.3d 927, 930 (Tex.2010) (citing *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008)). We " 'read the statute as a whole and interpret it to give effect to every part.' " *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water,* 336 S.W.3d 619, 628 (Tex.2011) (quoting *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003)).

### Is the franchise tax an "income tax" within the meaning of chapter 141?

Because resolution of Graphic's third issue is dispositive to this appeal, we assume without deciding that section 171.106(a) did not impliedly repeal chapter 141's election and formula and turn to Graphic's third issue. Graphic urges that a taxpayer has the option to choose chapter 141's three-factor formula or chapter 171's single-factor formula to apportion its margin to Texas for franchise tax purposes because "the Texas franchise tax is an 'income tax' as defined to be within the scope of the [Multistate Tax] Compact's applicability." According to Graphic, the franchise tax is a state "income tax" as defined in paragraph 4 of article II of section 141.001 and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

therefore it properly elected under paragraph 1 of article III to apportion its margin based on the three-factor formula. *See* Tex. Tax Code § 141.001, arts. II.4 (defining "income tax"), III.1 (authorizing taxpayer option).

Section 141.001 adopts the Multistate Tax Compact.[FN2] *See id.* § 141.001. Article III of section 141.001 is titled "Elements of Income Tax Law," and its paragraph 1 is titled "Taxpayer Option, State and Local Taxes." *See id.* art. III.1. Paragraph 1 states in relevant part:

> Any taxpayer subject to an income tax whose income is subject to apportionment and allocation for tax purposes pursuant to the laws of a party state ... may elect to apportion and allocate his income in the manner provided by the laws of such state ... without reference to this compact, or may elect to apportion and allocate in accordance with Article IV.

*Id.* art. III.1; *see also id.* art. IV.2 ("Any taxpayer having income from business activity which is taxable both within and without this state ... shall allocate and apportion his net income as provided in this article.").

> FN2. The purposes of the Multistate Tax Compact are to:
>
> > 1. Facilitate proper determination of state and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes.
> >
> > 2. Promote uniformity or compatibility in significant components of tax systems.
> >
> > 3. Facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration.

> > 4. Avoid duplicative taxation.
>
> Tex. Tax Code § 141.001, art. I.

**\*4** One of the grounds urged by the Comptroller in his motion for summary judgment was that Chapter 141's three-factor formula did not apply because the election to apportion "income" in article III is only available to taxpayers subject to "an income tax" and the franchise tax is not an "income tax." *Id.* art. III.1; *see also id.* arts. II.9 ("[T]he provisions of Articles III, IV, and V of this compact shall apply only to the taxes specifically designated therein."), III.3 ("Nothing in this article relates to the reporting or payment of any tax other than an income tax."). Graphic does not dispute that the district court properly granted summary judgment in favor of the Comptroller if the Texas franchise tax does not fall within chapter 141's definition of "income tax." *See Knott,* 128 S.W.3d at 216 (requiring summary judgment to be affirmed "if any of the theories presented to the trial court and preserved for appellate review are meritorious"). The controlling issue then is whether the franchise tax falls within the meaning of "income tax" as defined in chapter 141.

Paragraph 4 of article II of section 141.001 defines "income tax" as "a tax imposed on or measured by net income including any tax imposed on or measured by an amount arrived at by deducting expenses from gross income, one or more forms of which expenses are not specifically and directly related to particular transactions." Tex. Tax Code § 141.001, art. II.4. As a threshold matter, we conclude that chapter 141's definition of "income tax" is not ambiguous and interpret the definition based on its plain text in the context of the statutory scheme. *See Scott,* 309 S.W.3d at 930; *City of Round Rock v. Rodriguez,* 399 S.W.3d 130, 137 (Tex.2013) ("When a statute is clear and unambiguous, we do not resort to extrinsic aides such as legislative history to interpret the statute.").

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

Chapter 141 does not define the terms "net income" or "expenses" so we apply those terms' plain meanings. *See Scott,* 309 S.W.3d at 930. "[N]et income" is the "excess of all revenues and gains for a period over all expenses and losses of the period." *INOVA Diagnostics, Inc. v. Strayhorn,* 166 S.W.3d 394, 401 n. 7 (Tex.App.–Austin 2005, pet. denied) (quoting *Black's Law Dictionary* 1040 (6th ed.1990)); *see also Webster's Third Int'l Dictionary* 1519–20 (2002) (defining "net" as "remaining after the deduction of all charges, outlay, or loss" and "net income" as "balance of gross income remaining after deducting related costs and expenses usu[ally] for a given period and losses allocable to that period"). An "expense" is an "item of outlay incurred in the operation of a business enterprise allocable to and chargeable against revenue for a specific period." *Webster's* at 800.

We also conclude that the relevant language in chapter 171 is not ambiguous and similarly interpret this language based on the plain text in the context of the statutory scheme. *See Scott,* 309 S.W.3d at 930. Relevant to this appeal, a taxpayer's margin generally is the smallest of four amounts: (i) total revenue minus specified cost of goods sold, (ii) 70% of total revenue, (iii) total revenue minus $1 million, or (iv) total revenue minus specified compensation. Tex. Tax Code § 171.101; *see id.* § 171.1011 (stating calculation for determining total revenue from entire business); *Newpark,* 422 S.W.3d at 47. Alternatively, a taxpayer whose "total revenue from its entire business" does not exceed $10 million may use its "total revenue" instead of margin as its tax base for franchise tax purposes. *See* Tex. Tax Code § 171.1016 (authorizing "E–Z" computation).

Graphic argues that the franchise tax falls within chapter 141's definition of "income tax" because the franchise tax is "imposed on or measured by an amount arrived at by deducting expenses from gross income, one or more forms of which expenses are not specifically or directly related to particular transac-

tions." *See id.* § 141.001, art. II.4. Graphic focuses on the clause in chapter 141's definition of "income tax" that follows after the word "including," *see id.; see also* Tex. Gov't Code § 311.005(13) (noting that "including is 'term[ ] of enlargement' "), and the cost-of-goods alternative for determining margin. Tex. Tax Code § 171.101. According to Graphic, a taxpayer's "margin" for franchise tax purposes meets the definition of "net income" as that term is used in chapter 141's definition of "income tax" because a taxpayer may determine its tax base (its margin)—as Graphic did for the relevant tax years here—by subtracting its cost of goods sold, including indirect costs, and those indirect costs are "expenses" that are "not specifically or directly related to a particular transaction." *Compare id.* § 141.001, art. II.4 *with id.* § 171.1012(f) (allowing subtraction of specified "indirect or administrative overhead costs"); *see also Black's Law Dictionary* 397 (9th ed.2009) (defining "cost" as "amount paid or charged for something; price or expenditure").

**\*5** Comparing the plain meaning of the term "net income" to the statutory language describing the tax base for franchise tax, however, makes clear that the franchise tax does not fall within chapter 141's definition of "income tax." *Compare* Tex. Tax Code §§ 171.101 (determination of "margin"), .106 (apportionment of "margin" to Texas) *with id.* § 141.001, arts. II.4, IV.2 (apportionment of "net income").[FN3] Among the alternative tax bases for franchise tax purposes are "total revenue" and 70% of "total revenue." *Id.* §§ 171.101, .1016. Reading the plain language of these alternatives for determining a taxpayer's tax base, we decline to conclude that either can fairly be read to mean "net income." *See id.* § 171.1011 (stating calculation for determining "total revenue from entire business"); *see also Webster's* at 1519–20 (defining "net income"). Although "total revenue" is determined by subtracting certain exclusions such as bad debt, we decline to interpret it as synonymous with "net income." *See Scott,* 309 S.W.3d at 931 ("Courts must not give the words used

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

by the Legislature an 'exaggerated, forced, or constrained meaning.' " (citation omitted)).

> FN3. *See* David A. Vanderhider, Comment: *A Marginal Tax: The New Franchise Tax in Texas,* 39 St. Mary's L.J. 615, 646–47 (2008) (noting that non-profitable taxpayer may owe franchise tax because it has positive margin even though it has no net income).

Similarly, subtracting $1 million—a fixed amount—from "total revenue" is not the same as "deducting expenses from gross income." *Compare* Tex. Tax Code § 171.101 *with id.* § 141.001, art. II.4. Further, the cost-of-goods-sold and compensation alternatives for determining a taxpayer's margin allow subtractions only for select costs. *Id.* § 171.1012(f). To support Graphic's interpretation of the term "net income," the clause after "including" in chapter 141's definition would have to be rewritten to state "an amount arrived at by deducting [any] expense[ ] from gross income." "We are not free to rewrite the statute in the guise of construing it." *See Foster v. Texas Dep't of Criminal Justice,* 344 S.W.3d 543, 548 (Tex.App.–Austin 2011, pet. denied) (citing *Stockton v. Offenbach,* 336 S.W.3d 610, 619 (Tex.2011)).

Other provisions of chapter 141 provide further support for the interpretation of chapter 141's definition of "income tax" as not including the Texas franchise tax. *See Texas Citizens,* 336 S.W.3d at 628 (interpreting statute as whole). For example, paragraph 3 of article IV of section 141.001 addresses apportioning a taxpayer's "net income" to a member state for that state's income tax. For that purpose, the provision defines a taxpayer as:

> taxable in another state if (1) in that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax, or (2) that state has jurisdiction to subject the taxpayer to a net

income tax regardless of whether, in fact, the state does or does not.

Tex. Tax Code § 141.001, art. IV.3. This provision allows a taxpayer that does business in Texas to be eligible to apportion its net income to a member state that has an income tax because Texas has a "franchise tax for the privilege of doing business." *See id.* This provision then ensures apportionment of net income for income tax purposes regardless of how other member states tax businesses, at the same time that it recognizes and distinguishes different types of tax, including distinguishing franchise and income tax. *See id.; TGS–NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex.2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."). Consistent with paragraph 3 of article IV, article II defines different types of tax, defines "tax" generally to include "any other tax which has a multistate impact," and limits the reach of article III to "income tax." *See* Tex. Tax Code § 141.001, art. II.4–9 (defining various types of tax and "tax" to mean "an income tax, capitol stock tax, gross receipts tax, sales tax, use tax, and any other tax which has a multistate impact" and limiting article III to "tax[ ] specifically designated therein"); *see also id.* art. III.3 ("Nothing in this article relates to the reporting or payment of any tax other than an income tax.").

**\*6** As to chapter 171, we assume that the legislature was aware of chapter 141 and its definition of "income tax" when it restructured the franchise tax in 2006. *See Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990) ( "A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). Section 171.106(a) expressly states that the single-factor formula applies "[e]xcept as provided by this section." *See* Tex. Tax Code § 171.106(a). Chapter 141's three-factor formula is not listed among the alternative formulas in section 171.106. *See id.* §

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

171.106 (listing alternative formulas for apportioning margin to Texas). Had the legislature intended for chapter 141's three-factor formula to be an alternative for apportioning margin for franchise tax purposes, it could have included it as one of the expressed alternatives in section 171.106. *See TGS–NOPEC,* 340 S.W.3d at 439; *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 175 (Tex.1980) (holding because legislature knew how to include terms within statutory definition and did not do so, statutory definition did not include terms "in light of [the term's] contemporaneous inclusion of the same terms in a separate provision"). Similarly, section 171.1014 addresses combined reporting and affiliated groups engaged in unitary business and incorporates chapter 141's factoring formula for property and payroll to determine a taxable entity's eligibility to be included in a combined group. *See* Tex. Tax Code § 171.1014. In the same act, the legislature expressly incorporated the factoring formula from chapter 141 when it wanted to do so, but it did not do so as to the single-factor formula for apportioning margin. *See* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 17–18 (codified at Tex. Tax Code § 171.1014); Tex. Tax Code § 171.106(a); *Riverside,* 603 S.W.2d at 175.

Graphic relies on the legislature's deletion of section 171.112(g) in the 2006 franchise tax restructuring to support its argument. Former section 171.112(g) stated that "[c]hapter 141 does not apply to this chapter." Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.10, 1991 Tex. Gen. Laws 134, 162 (former Tex. Tax Code § 171.112(g)). However, we do not find the deletion as legislative intent to activate articles III and IV of section 141.001 for Texas franchise tax purposes. In 2006, the legislature deleted section 171.112 entirely because that section addressed gross receipts for taxable capital and the restructured franchise tax replaced capital and earned surplus with "margin" as the franchise tax's main tax base. *See* Act of May 2, 2006, ch. 1, § 2, 2006 Tex. Gen. Laws 1, 6–7 (codified at Tex. Tax Code § 171.002); *see also In re Nestle,* 387 S.W.3d at 612 (discussing history of

franchise tax). The legislature also contemporaneously enacted a separate section that expressly stated that "[t]he franchise tax imposed by Chapter 171, Tax Code, as amended by this Act, is not an income tax." Act of May 2, 2006, ch. 1, § 21, 2006 Tex. Gen. Laws 1, 38.[FN4]

> FN4. That section of the Act also specified that "Pub.L. No. 86–272 does not apply to the tax." Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 21, 2006 Tex. Gen. Laws 1, 38. Public Law Number 86–272 addresses net income tax, which is defined in the same terms as the main clause of chapter 141's definition of income tax. *See* Act of Sept. 14, 1959, Pub.L. No. 86–272, Title I, § 103, 73 Stat. 556 (codified at 15 U.S.C. § 383) ("[T]he term 'net income tax' means any tax imposed on, or measured by, net income."); *see also generally INOVA Diagnostics, Inc. v. Strayhorn,* 166 S.W.3d 394 (Tex.App.–Austin 2005, pet. denied) (discussing Public Law Number 86–272 in context of prior version of Texas franchise tax).

Graphic relies on the definition of "gross receipts tax" in chapter 141 to argue that "a tax on business activity" must be either an "income tax" or a "gross receipts tax" as those terms are defined in chapter 141. *See* Tex. Tax Code § 141.001, art. II.6. Paragraph 6 of article II defines "gross receipts tax" to mean:

> a tax, other than a sales tax, which is imposed on or measured by the gross volume of business, in terms of gross receipts or in other terms, and in the determination of which no deduction is allowed which would constitute the tax an income tax.

*Id.* Graphic argues that "income tax" and "gross receipts tax" are "all encompassing, and mutually exclusive, categories." Therefore, because the franchise tax does not fall within chapter 141's definition

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)
**(Cite as: 2015 WL 4603683 (Tex.App.-Austin))**

of a "gross receipts tax," Graphic urges that it must be an "income tax." Although we agree with Graphic that the franchise tax does not fall within chapter 141's definition of a "gross receipts tax," we cannot agree that it follows that the franchise tax falls within chapter 141's definition of "income tax." As previously stated, article II of section 141.001 expressly recognizes and defines other types of taxes, including defining "tax" to include "any other tax which has a multistate impact." *See id.* art. II.4–9. Thus, concluding that the franchise tax does not fall within chapter 141's definition of a "gross receipts tax" is not helpful to Graphic's position.

**\*7** Graphic also relies on a recent opinion from the Michigan Supreme Court. *See International Bus. Machines Corp. v. Department of Treasury,* 496 Mich. 642, 852 N.W.2d 865 (2014). In that case, the Michigan Supreme Court held that Michigan's modified gross receipts tax (MGRT) fit within the Multistate Tax Compact's definition of an "income tax." *Id.* at 880. The court examined how a taxpayer's MGRT base was calculated and concluded that the MGRT fit within the definition because it taxed "a variation of net income—the entire amount received by the taxpayer as determined from any gainful activity minus inventory and certain other deductions that are expenses not specifically and directly related to a particular transaction." *Id.* In contrast, a taxpayer's margin for Texas franchise tax purposes is not a "variation of net income" as margin is determined in several alternative ways, none of which results in taxing net income. *See* Tex. Tax Code § 171.101 (describing alternatives for determining taxable margin). Thus, we do not find Michigan's MGRT sufficiently similar to the Texas franchise tax to find that case helpful to Graphic's position.

Applying the plain meaning of chapter 141's definition of "income tax" in the context of the overall structures of chapters 141 and 171, we agree with the Comptroller that the franchise tax is not "a tax imposed or measured by net income" and, therefore, that

it does not fall within chapter 141's definition of an "income tax." *See* Tex. Tax Code § 141.001, art. II.4. Because the franchise tax is not an "income tax" within the meaning of chapter 141, the three-factor formula was not an alternative apportionment formula for Graphic, and Graphic was required to use the single-factor formula in section 171.106(a) to apportion its margin to Texas for franchise tax purposes for the 2008 to 2010 tax years. Thus we must affirm the district court's summary judgment in favor of the Comptroller on this basis. *See Knott,* 128 S.W.3d at 216.[FN5]

> FN5. Because we have concluded that this ground supports the district court's summary judgment, we do not reach Graphic's first and second issues. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003); *see also* Tex.R.App. P. 47.1. Further, because we interpret the relevant statutes based on their plain language, we do not address the parties' arguments based on extrinsic aids. *See City of Round Rock v. Rodriguez,* 399 S.W.3d 130, 137 (Tex.2013).

## CONCLUSION

For these reasons, we affirm the district court's judgment.

Tex.App.-Austin, 2015
Graphic Packaging Corporation v. Hegar
--- S.W.3d ----, 2015 WL 4603683 (Tex.App.-Austin)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.