# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #053

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of December, 2018**, are as follows:

**BY GENOVESE,J.:**

2018-CA-0728        IVAN I. SMITH, JR. AND GLORIA G. SMITH v. KIMBERLY L. ROBINSON, SECRETARY OF THE DEPARTMENT OF REVENUE, STATE OF LOUISIANA (Parish of E. Baton Rouge)

This case comes to this Court on direct appeal from the Nineteenth Judicial District Court of East Baton Rouge Parish pursuant to Louisiana Constitution Article V, § 5(D) upon a declaration by that court that 2015 La. Acts No. 109 ("Act 109"), which amended La.R.S. 47:33, is unconstitutional. Plaintiffs, Ivan I. Smith, Jr. and Gloria G. Smith (collectively "Taxpayers"), are Louisiana residents and part owners of several limited liability companies ("LLC") and Subchapter S corporations ("S corporation") that transact business in Texas, Arkansas, and Louisiana. Defendant herein is Kimberly L. Robinson, in her capacity as Secretary of the Department of Revenue of the State of Louisiana (the "Department"). Taxpayers filed the instant suit seeking recovery of income taxes paid under protest. At issue is whether Act 109, which amended La.R.S. 47:33, a state income tax statute that provides a credit to taxpayers for income taxes paid in other states, violates the dormant Commerce Clause of the United States Constitution. For the reasons herein set forth, we conclude that Act 109, which amended La.R.S. 47:33, violates the dormant Commerce Clause of the United States Constitution. Consequently, the judgment of the district court is hereby affirmed.

AFFIRMED.

Retired Judge Freddie Pitcher, Jr., assigned as Justice ad hoc, sitting for Crichton, J., recused.

CRICHTON, J., recused.

SUPREME COURT OF LOUISIANA

No. 2018-CA-0728

IVAN I. SMITH, JR. AND GLORIA G. SMITH

VERSUS

KIMBERLY L. ROBINSON, SECRETARY OF THE
DEPARTMENT OF REVENUE, STATE OF LOUISIANA

ON APPEAL
FROM THE NINETEENTH JUDICIAL DISTRICT COURT
FOR THE PARISH OF EAST BATON ROUGE

**Genovese, Justice**[*]

This case comes to this Court on direct appeal from the Nineteenth Judicial

District Court of East Baton Rouge Parish pursuant to Louisiana Constitution Article

V, § 5(D)[1] upon a declaration by that court that 2015 La. Acts No. 109 ("Act 109"),

which amended La.R.S. 47:33, is unconstitutional.

Plaintiffs, Ivan I. Smith, Jr. and Gloria G. Smith (collectively "Taxpayers"),

are Louisiana residents and part owners of several limited liability companies

("LLC") and Subchapter S corporations ("S corporation") that transact business in

Texas, Arkansas, and Louisiana. Defendant herein is Kimberly L. Robinson, in her

capacity as Secretary of the Department of Revenue of the State of Louisiana (the

"Department").[2] Taxpayers filed the instant suit seeking recovery of income taxes

paid under protest. At issue is whether Act 109, which amended La.R.S. 47:33, a

state income tax statute that provides a credit to taxpayers for income taxes paid in

_____

[*] Retired Judge Freddie Pitcher, Jr., assigned as Justice ad hoc, sitting for Crichton, J., recused.

[1] Louisiana Constitution Article V, § 5(D), provides that "a case shall be appealable to the supreme court if . . . a law or ordinance has been declared unconstitutional[.]"

[2] The Attorney General of the State of Louisiana was served with the captioned lawsuit in accordance with Louisiana Code of Civil Procedure Article 1880 and made no appearance.

other states, violates the dormant Commerce Clause of the United States Constitution.

For the reasons hereinafter set forth, we conclude that Act 109, which amended La.R.S. 47:33, violates the dormant Commerce Clause of the United States Constitution. Consequently, the judgment of the district court is hereby affirmed.

## FACTS AND PROCEDURAL HISTORY

Taxpayers own an interest in several LLCs and S corporations (the "Pass-Through Entities") that transact business in Texas, Arkansas, and Louisiana. Taxpayers, Louisiana residents, paid 2015 Texas franchise taxes in the amount of $23,180.00, representing the amount of taxes based on the Pass-Through Entities' Texas-sourced income. Taxpayers were also subject to the Louisiana income tax on all of the income they derived both outside and inside Louisiana. The Department denied Taxpayers the credit they claimed against their 2015 Louisiana income tax for the franchise taxes they paid to the state of Texas; thus, Taxpayers paid $23,180.00, the amount of credit against Louisiana income tax to which Taxpayers would have been entitled absent Act 109, under protest, and then filed a Petition for Refund of Tax Paid Under Protest.[3] The subject of the protest is the disallowance of the credit for taxes paid to Texas as a result of Act 109.

In the Petition for Refund of Tax Paid under Protest, Taxpayers alleged that Act 109 limits the availability of credits for income taxes paid to other states. Pursuant to Act 109, credits are only available for income taxes paid to a state that

---

[3] Louisiana Revised Statutes 47:1576(A)(1)(a) provides:

> Except as otherwise provided in Subsection B of this Section, any taxpayer protesting the payment of any amount found due by the secretary of the Department of Revenue, or the enforcement of any provision of the tax laws in relation thereto, shall remit to the Department of Revenue the amount due and at that time shall give notice of intention to either file suit or file a petition with the Board of Tax Appeals for purposes of recovery of such tax.

offers a reciprocal credit to that state's own residents who transact business in Louisiana. Texas does not offer such a credit; thus, Act 109 denies a credit to Louisiana residents who transact business in Texas. Taxpayers asserted in the district court that the reciprocal credit requirement of Act 109 is unconstitutional as it violates the dormant Commerce Clause by subjecting them to multiple taxation. Taxpayers prayed that Act 109 be declared unconstitutional and that the taxes paid in accordance with Act 109 be refunded with interest as provided by law.

In the district court, Taxpayers filed a Motion for Summary Judgment on the issue of the unconstitutionality of Act 109 and their entitlement to a refund of the taxes paid under protest. Taxpayers argued that Act 109 is unconstitutional because the Texas franchise tax imposes a tax on income, and Taxpayers would be entitled to a credit for the amount of Texas franchise taxes paid absent Act 109. Additionally, because Act 109 levels a double tax on interstate income, but not intrastate income, it violates the dormant Commerce Clause.

The Department opposed Taxpayers' Motion for Summary Judgment, arguing that the Texas franchise tax is not a tax on net income because it contains both a net income component and a net capital component, which are not divisible. Relative to the dormant Commerce Clause, the Department denied that Act 109 burdens interstate commerce because it is within the state's power to regulate state income tax.

Following a hearing, the district court reasoned that the First Circuit Court of Appeal in *Perez v. Secretary of Louisiana Department of Revenue & Taxation*, 98-330 (La.App. 1 Cir. 3/8/99), 731 So.2d 406, *writ denied*, 99-951 (La. 6/4/99), 743 So.2d 1256, had already addressed and affirmatively concluded that the Texas franchise tax was an income tax under Louisiana law; thus, it was settled law and binding on the court. Further, the district court concluded that the United States

Supreme Court decision in *Comptroller of Treasury of Maryland v. Wynne*, 135 S.Ct. 1787 (2015), was dispositive of the constitutional issue raised. The district court found the resolution to be "straightforward," given the holdings of *Perez* and *Wynne*. For these reasons, the district court granted Taxpayers' Motion for Summary Judgment, declared Act 109 unconstitutional, and rendered judgment in favor of Taxpayers for $23,180.00, plus interest as provided by law.

The Department, pursuant to Louisiana Constitution Article V, § 5(D), directly and suspensively appealed the district court judgment to this Court.

## LAW AND ANALYSIS

**Act 109**

Prior to 2015, a Louisiana taxpayer who derived income from another state, and who paid net income taxes on that income in that other state, received a full credit for the payment of out-of-state taxes pursuant to La.R.S. 47:33. Prior to 2015, La.R.S. 47:33 provided in pertinent part:

> A. Subject to the following conditions, resident individuals shall be allowed a credit against the taxes imposed by this Chapter for net income taxes imposed by and paid to another state on income taxable under this Chapter, provided that:
>
> (1) The credit shall be allowed only for taxes paid to the other state on income which is taxable under its law irrespective of the residence or domicile of the recipient.

In 2015, the Louisiana legislature adopted Act 109, which amended La.R.S. 47:33. Act 109 amended La.R.S. 47:33(A)(4) through (6) to provide:

> A. Subject to the following conditions, resident individuals shall be allowed a credit against the taxes imposed by this Chapter for net income taxes imposed by and paid to another state on income taxable under this Chapter, provided that:
>
> . . . .
>
> (4) The credit shall be allowed only if the other state provides a similar credit for Louisiana income taxes paid on income derived from property

4

located in, or from services rendered in, or from business transacted in Louisiana.

(5) The credit shall be limited to the amount of Louisiana income tax that would have been imposed if the income earned in the other state had been earned in Louisiana.

(6) The credit shall not be allowed for income taxes paid to a state that allows a nonresident a credit against the income taxes imposed by that state for taxes paid or payable to the state of residence.

As a result of the 2015 amendment to La.R.S. 47:33,[4] a Louisiana taxpayer is allowed to take a credit for out-of-state taxes paid on income earned out of state only if that other state's tax laws provide a reciprocal credit for residents of that state who earn income in Louisiana. Further, even if a reciprocal credit exists, the credit is limited to the amount the taxpayer would have paid in Louisiana taxes.

**Motion for Summary Judgment**

In this case, the district court's ruling was pursuant to Taxpayers' Motion for Summary Judgment. La.Code Civ.P. art. 966. Summary judgments are reviewed *de novo* on appeal, with the reviewing court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Louisiana Ins. Guar. Ass'n*, 09-23, p. 5 (La. 6/26/09), 17 So.3d 350, 353. In this case, there are no material issues of fact in dispute. We are called upon to interpret the law at issue. Questions of law are reviewed *de novo*, without any deference to the legal conclusions reached by the district court, as this court is the ultimate arbiter of the meaning of laws of this state. *Jackson v. City of New Orleans*, 12-2742, 12-2743, p. 6 (La. 1/28/14), 144 So.3d

---

[4] Louisiana Revised Statutes 47:33 was again amended by 2018 La. Acts No. 6; however, said 2018 amendment to La.R.S. 47:33 has no bearing on the issues presented in this case.

876, 882, *cert. denied*, 135 S.Ct. 197 (2014), (citing *Catahoula Par. Sch. Bd. v. Louisiana Mach. Rentals, LLC.*, 12-2504, p. 9 (La. 10/15/13), 124 So.3d 1065, 1071).

**Louisiana Revised Statutes 47:33**

The initial inquiry is whether the Taxpayers' payment of the Texas franchise tax is a "net income tax[] imposed by and paid to another state[,]" pursuant to La.R.S. 47:33(A). As recognized by the district court, this precise issue was decided by the First Circuit Court of Appeal in the case of *Perez*, 731 So.2d 406, which held that Texas franchise tax paid by an S corporation is a net income tax paid by individual shareholders of the S corporation, and that such shareholders are entitled to a credit for the tax paid to Texas against their Louisiana tax liability.

The taxpayers in *Perez* were Louisiana residents and sole shareholders of a Louisiana S corporation. The Perezes filed a Louisiana individual income tax return and claimed a credit under La.R.S. 47:33 for Texas franchise taxes paid by their S corporation to Texas. The Department denied their claim and argued that the credit is allowed only for net income taxes paid to another state and that the Texas franchise tax was not an income tax. The Department also argued that the credit was not allowed because the S corporation paid the tax, the Perezes did not. The court of appeal concluded that the Texas franchise tax, "to the extent it was imposed on an income base, is a net income tax imposed by and paid to another state on income also taxable under Louisiana's income tax laws, as required for the application of [La.R.S.] 47:33." *Perez*, 731 So.2d at 408-09. The court of appeal also held that "the fact that the Corporation paid the Texas tax does not prevent the tax from being available to an individual taxpayer for a credit pursuant to [La.R.S.] 47:33." *Id.* at 409.

6

Notably, the Department acquiesced in the *Perez* decision in its Statement of Acquiescence No. 03-001 issued September 10, 2003. Therein, the Department concluded that "[t]axes on net income paid by an S corporation shall be considered taxes on net income paid by shareholders of the S corporation for purposes of computing the credit allowed under [La.R.S.] 47:33."[5]

The Department now reverses its position and currently asserts that the Texas franchise tax is not an income tax pursuant to La.R.S. 47:33 and that the district court erred in relying on *Perez* and concluding to the contrary. First, the Department urges that the district court reached its erroneous conclusion by failing to recognize that the credit granted by La.R.S. 47:33 must be strictly construed against the Taxpayers.[6] The Department claims that not only did the *Perez* decision fail to adhere to the rule of strict construction, but it also failed to cite the Texas Constitution, which forbids the imposition of an income tax absent voter referendum. Moreover, the Department now rejects *Perez*, as that decision predates the revisions to the Texas franchise tax in 2006; therefore, it contends that *Perez* did not analyze La.R.S. 47:33 after its 2015 amendment in relation to the Texas franchise tax provisions after its 2006 revisions.

---

[5] The Statement of Acquiescence contains the following language:

> A Statement of Acquiescence or Nonacquiescence (SA/SNA) is issued under the authority of LAC 61:III.101(C). It is a written statement to provide guidance to the public and to Department of Revenue employees. An SA/SNA is a written statement issued to announce the Department's acceptance or rejection of specific unfavorable court or administrative decisions. If a decision covers several disputed issues, an SA/SNA may apply to just one issue, or more, as specified. An SA/SNA is not binding on the public, but is binding on the Department unless superceded by a later SA/SNA, declaratory ruling, rule, statute, or court case.

[6] "[E]xemptions from taxation are to be strictly construed against the person claiming the exemption, and any plausible doubt is fatal, *Mattingly v. Vial*, 193 La. 1, 190 So. 313 (1939), and that an exemption being an exceptional privilege, it must be clearly, unequivocally and affirmatively established. *Meyers v. Flournoy*, 209 La. 812, 25 So.2d 601 (1946)." *Ethyl Corp. v. Collector of Revenue*, 351 So.2d 1290, 1293 (La.App. 1 Cir. 1977), *writ denied*, 353 So.2d 1035 (La.1978).

The Department's initial argument is that Taxpayers in this case are not entitled to claim the credit because, strictly construing La.R.S. 47:33(A), the Texas franchise taxes paid are not "net income taxes imposed by and paid to another state[.]" The Department argues that because it is not an income tax, Taxpayers are not entitled to the credit under the plain language of La.R.S. 47:33; thus, the district court erred in deciding the constitutionality issue. Instead, the Department maintains that this Court may resolve this matter solely on the basis that the Taxpayers do not qualify for the credit on statutory grounds.

Since the *Perez* decision in 1999, which holding the Department acquiesced in since 2003, a Louisiana taxpayer who paid the Texas franchise tax on income derived from sources in Texas has been entitled to claim a credit for those taxes paid against its Louisiana tax liability. Indeed, even after Texas revised its franchise tax provisions, the Department did not revoke or modify its Statement of Acquiescence, and it made no change in its position relative to a taxpayer's entitlement to a credit. The Department now reverses its longstanding position and asserts that the Texas franchise tax is not an income tax pursuant to La.R.S. 47:33. We find no merit in this contention.

The *Perez* court correctly held that the Texas franchise tax is a tax on net income, applying the test established by this Court in *City of New Orleans v. Scramuzza*, 507 So.2d 215 (La.1987).[7] In *Scramuzza*, 507 So.2d at 218, this Court

---

[7] At issue in *Scramuzza* was an earnings tax, which this Court found was an income tax because it operated to tax income. In *Scramuzza*, this Court reasoned that "[t]o ascertain a precise definition of an income tax would prove to be a near impossible task[,]" and that any "definition must necessarily vary to conform to the various systems of income taxation." *Scramuzza*, 507 So.2d at 218 (footnote omitted). This Court stated, therefore, that its task was not to provide a definition of income tax; instead, it merely had to determine if the earnings tax should be classified as an income tax. This Court recognized that an "[i]ncome tax . . . may be understood both technically and in more general terms[,]" and concluded that "[a]n income tax in most generally understood terms is a tax on income." *Id.* at 218. This Court recently affirmed the *Scramuzza* test in *Beer Industry League of Louisiana v. City of New Orleans*, 18-280, 18-285, p. 10 (La. 6/27/18), 251 So.3d 380, 387.

held that the "[c]lassification of a tax must be determined by its operational effect rather than by the descriptive language used in drafting the enactment." *Perez* recognized that "in classifying a tax[,] the operational and consequential effect of the tax must be given paramount consideration." *Perez*, 731 So.2d at 408 (citing *Scramuzza*, 507 So.2d at 219). Pursuant to S*cramuzza*, the *Perez* court concluded that the "operational effect" of the Texas franchise tax was to tax the income of the corporation. *Perez*, 731 So.2d at 408.

In considering the current version of the Texas franchise tax, the relevant inquiry remains whether the operational and consequential effect of the law is to impose a tax on income that is subject to the Louisiana income tax. *Scramuzza*, 507 So.2d 215. Therefore, we must examine the current version of the Texas franchise tax.[8]

In its current form, the Texas franchise tax uses a three-step calculation to arrive at a "taxable margin." Tex. Tax Code § 171.101. Step one of the calculation begins with a taxpayer's gross receipts; from the gross receipts, the taxpayer deducts certain amounts for returns and other allowances. Tex. Tax Code §§ 171.101; 171.1011. Secondly, the Texas tax code allows for additions or deductions to arrive at a "total revenue" figure. Tex. Tax Code §§ 171.101; 171.1011. The amount of "total revenue" is the figure used for the third step of the calculation. In the final step, the taxpayer uses one of four alternative methods to determine the "taxable margin": (1) seventy percent of the "total revenue"; (2) "total revenue" minus $1,000,000.00; (3) "total revenue" minus wages; or, (4) "total revenue" minus cost of goods sold. Tex. Tax Code § 171.101. Once the "taxable margin" is derived, the

---

[8] *See In re Nestle USA, Inc.*, 387 S.W.3d 610 (Tex.2012) (discussing the history of the Texas franchise tax on domestic and foreign corporations since 1893).

taxpayer then apportions that amount and takes other allowable deductions. Tex. Tax Code §§171.106; 171.107-09.

Considering the manner in which the current Texas franchise tax is calculated, it is still essentially imposed on an income basis. The *Perez* court opined that "the Texas tax, to the extent it was imposed on an income base, is a net income tax imposed by and paid to another state on income also taxable under Louisiana's income tax laws, as required for the application of [La.R.S.] 47:33." *Perez*, 731 So.2d at 408-09. The sole question, as espoused in *Scramuzza*, is whether the operational and consequential effect means that the tax can be fairly classified as a tax on net income. The *Perez* court correctly determined that it did, and we conclude that the revisions to the Texas franchise tax in 2006 did not change this result. The current version of the Texas franchise tax begins with revenue, applies the three-step calculation, and taxes income that is also taxable under Louisiana law. For these reasons, like the franchise tax prior to 2006, the Texas franchise tax post 2006 is a net income tax for purposes of La.R.S. 47:33.

In addition to finding that the Texas franchise tax was a net income tax, *Perez* also addressed the fact that the payment of that tax was made by a pass-through entity doing business in Texas, but the credit was being claimed by individual shareholders of the S corporation stating:

> The Department contends that the credit cannot be given to the Perezes for a tax liability owed and paid by the Corporation. There is no statutory requirement that the tax be imposed on the individual shareholders of an "S" Corporation or that the shareholders have personal liability for the tax in order for the credit to be allowed. [La.R.S.] 47:33 does not require that the tax paid to the other state be imposed on or paid by the individual taxpayer. As long as a net income tax of another state is "paid" to that other state on income also taxable by Louisiana, a credit is allowed. Therefore, the fact that the Corporation paid the Texas tax does not prevent the tax from being available to an individual taxpayer for a credit pursuant to [La.R.S.] 47:33.

10

*Perez*, 731 So.2d at 409. We agree and reiterate that the Department acquiesced in this holding stating in its Statement of Acquiescence No. 03-001 that "[t]axes on net income paid by an S corporation shall be considered taxes on net income paid by shareholders of the S corporation for purposes of computing the credit allowed under [La.R.S. 47:33]."

At present, and reversing its position, the Department now urges that it is not plausible that the Texas franchise tax imposed upon the S corporation and the LLC can be characterized as a net income tax imposed upon Taxpayers individually. Because of the legal nature and manner of taxation of S corporations and LLCs, for the shareholders or members of these pass-through entities, the operational and consequential effect is a tax on the individual taxpayer. The pass-through entity does not pay a tax on its income. To the contrary, that income is distributed to the shareholders or members, and the shareholder or member individually pays income tax on the distributions. Therefore, we find no merit to the Department's assertion that the requisite strict construction of the statute against Taxpayers results in the conclusion that it does not apply to a franchise tax imposed upon Taxpayers' Pass-Through Entities.

In its original brief to this Court, the Department relies on *Graphic Packaging Corp. v. Hegar*, 471 S.W.3d. 138, 147 (Tex. App. Austin 2015), 538 S.W.3d 89 (Tex. 2017), wherein a Texas appellate court held "that the [Texas] franchise tax is not 'a tax imposed or measured by net income' and, therefore, that it does not fall within chapter 141's definition of an 'income tax'. *See* Tex. Tax Code § 141.001, art. II.4." Relying on *Graphic Packaging*, the Department also seeks to distinguish the Texas franchise tax from the earnings tax addressed in *Scramuzza*.

First, this Court is not bound by a Texas appellate court decision interpreting a provision of a Texas statute. Second, *Graphic Packaging* did not address whether

the franchise tax was an income tax pursuant to La.R.S. 47:33. Moreover, in affirming the appellate court, the Texas Supreme Court did not reach that conclusion, stating: "Even were we to agree with Graphic that its franchise tax for the years in question amounted to the same thing as chapter 141's income tax (an issue we do not decide) . . . . " *Graphic Packaging*, 538 S.W.3d at 96. Thus, the supreme court of Texas has not so declared.[9]

Additionally, with respect to the Department's specific argument relative to a gross receipts tax as discussed in *Graphic Packaging*, we find that the district court in this case correctly referenced and relied upon the United States Supreme Court in *Wynne*, 135 S.Ct. 1787, as authority. In *Wynne*, the United States Supreme Court directly addressed the distinction between a tax on gross receipts and a tax on net income in the context of a dormant Commerce Clause analysis. The *Wynne* Court opined that the nature of the tax is determined by its practical effect. Specifically, the Court stated that it saw "no reason why the distinction between gross receipts and net income should matter, particularly in light of the admonition that we must consider 'not the formal language of the tax statute but its practical effect.'" *Wynne*, 135 S.Ct. at 1795 (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079 (1977)). The *Wynne* Court stated:

> And we have now squarely rejected the argument that the Commerce Clause distinguishes between taxes on net and gross income. See [*Oklahoma Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 190, 115 S.Ct. 1331, 1341 (1995),] (explaining that the Court in [*Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653, 68 S.Ct. 1260 (1948),]

---

[9] The Department filed a supplemental brief to discuss the recent decision of *Goggin v. State Tax Assessor*, 191 A.3d 341 (Me. 2018). We are not persuaded by that decision wherein a Maine resident, who was a member of a New Hampshire LLC, sought Maine's tax credit for business taxes imposed by New Hampshire on the LLC. The court found that Maine's credit for income tax paid in another state did not include business taxes paid in the other state. The *Goggin* court noted, first, that the LLC was an out-of-state (New Hampshire) LLC; therefore, the LLC was bound by New Hampshire's tax laws, not Maine's tax laws. "Second, the term 'income tax' in Maine's statute is a term of art" that provides "a credit only for *income tax*es paid by individuals on income derived from other states[,]" and it did not apply to taxes imposed on business entities. *Id.* at 346. Thus, the Maine case is readily distinguishable.

"understood the gross receipts tax to be simply a variety of tax on income"); *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 280, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (rejecting a suggestion that the Commerce Clause distinguishes between gross receipts taxes and net income taxes); *id.,* at 281, 98 S.Ct. 2340 (Brennan, J., dissenting) ("I agree with the Court that, for purposes of constitutional review, there is no distinction between a corporate income tax and a gross-receipts tax"); *Complete Auto[Transit, Inc.,* 430 U.S.] at 280, 97 S.Ct. 1076 (upholding a gross receipts tax and rejecting the notion that the Commerce Clause places "a blanket prohibition against any state taxation imposed directly on an interstate transaction").

*Id.* at. 1796 (footnote omitted).

For the foregoing reasons, we hold that a taxpayer's payment of Texas franchise taxes under the 2006 revisions of the Texas statutes are income taxes pursuant to the 2015 revisions of La.R.S. 47:33, as amended by Act 109. In so concluding, we reject the Department's invitation to resolve this matter on statutory grounds without reaching the constitutional question before this Court.[10] Having found that the Texas franchise tax is income tax for purposes of La.R.S. 47:33, we must next address whether the district court erred in finding Act 109 to be unconstitutional.

**The Dormant Commerce Clause**

The Department argues that even if the Texas franchise tax is an income tax for purposes of La.R.S. 47:33, it, nevertheless, does not violate the dormant Commerce Clause. As an initial matter, we note that statutes are presumed to be constitutional; therefore, the party challenging the validity of the statute bears the burden of proving that statute to be unconstitutional.[11] The "party challenging the

---

[10] "Courts 'should avoid constitutional rulings when the case can be disposed of on non-constitutional grounds.'" *Burmaster v. Plaquemines Par. Gov't.,* 07-2432, p. 7 (La. 5/21/08), 982 So.2d 795, 802 (quoting *Ring v. State, Dep't of Transp. & Dev.,* 02-1367, p. 4 (La. 1/14/03), 835 So.2d 423, 427).

[11] *State v. Citizen,* 04-1841, p. 11 (La. 4/1/05), 898 So.2d 325, 334; *Louisiana Mun. Ass'n v. State,* 04-227, p. 45 (La. 1/19/05), 893 So.2d 809, 842; *Bd. of Comm'rs of North Lafourche Conservation, Levee & Drainage Dist. v. Bd. of Comm'rs of Atchafalaya Basin Levee Dist.,* 95-1353, p. 3 (La. 1/16/96), 666 So.2d 636, 639.

constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question."[12]  Finally, the presumption of constitutionality is especially forceful in cases involving statutes related to taxation and public finance.[13]  With these principles in mind, we now turn to the merits of the dormant Commerce Clause challenge.

"The Commerce Clause grants Congress power to 'regulate Commerce . . . among the several States.' Art. I, § 8, cl. 3." *Wynne*, 135 S.Ct. at 1794.  "Although the Clause is framed as a positive grant of power to Congress, 'we have consistently held this language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject.'" *Id.* (quoting *Jefferson Lines, Inc.*, 514 U.S. at 179).

The United States Supreme Court established a four-part test to assess the validity of state taxes under the Commerce Clause in *Complete Auto Transit, Inc.*, 430 U.S. 274 ("*Complete Auto*").  Under the *Complete Auto* test, a state tax on interstate commerce is upheld if the tax:  (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and, (4) is fairly related to the services provided by the state.  *Id.* at 279.  In this case, Taxpayers do not argue the absence of a substantial nexus with the state or the lack of a fair relationship to the services

---

[12]*Fruge v. Bd. of Tr. of Louisiana State Emp.'s Ret. Sys.*, 08-1270, pp. 5-6 (La. 12/2/08), 6 So.3d 124, 128 (citing *World Trade Ctr. Taxing Dist. v. All Taxpayers, Property Owners*, 05-374, p. 12 (La. 6/29/05), 908 So.2d 623, 632; *Caddo-Shreveport Sales & Use Tax Comm'n v. Office of Motor Vehicles Dep't of Pub. Safety & Corr. of the State*, 97-2233, pp. 5-6 (La. 4/14/98), 710 So.2d 776, 779; *Polk v. Edwards*, 626 So.2d 1128, 1132 (La.1993)).

[13] *Beer Indus. League of Louisiana*, 251 So.3d at 386 (citing *Caddo-Shreveport Sales & Use Tax Comm'n*, 710 So.2d at 779); *Bd. of Dirs. of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, and Citizens of State of Louisiana*, 529 So.2d. 384, 387 (La.1988).

provided by the state. Taxpayers argue that Act 109 violates the second and third prong of the *Complete Auto* test pertaining to the apportionment of the tax and discrimination against interstate commerce.

The second prong of the *Complete Auto* test "'ensures that each State taxes only its fair share of an interstate transaction.'" *Jefferson Lines, Inc.*, 514 U.S. at 184 (quoting *Goldberg v. Sweet*, 488 U.S. 252, 260-61, 109 S.Ct. 582, 588 (1989)). In *Jefferson Lines*, the Supreme Court recognized that since *Goldberg*, it has "assessed any threat of malapportionment by asking whether the tax is 'internally consistent' and, if so, whether it is 'externally consistent' as well." *Id.* at 185 (quoting *Goldberg*, 488 U.S. at 261).

In *Wynne*, 135 S.Ct at 1802 (quoting *Jefferson Lines*, 514 U.S. at 185), the Court explained the application of the internal consistency test, which "'looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate.'" The Department contends that Act 109 meets the internal consistency test because "[i]f every state offered the same credit against income taxes as does Louisiana, all [states] would grant a credit that precisely reduced the taxpayers in-state income tax to the same amount they would pay if they earned all that income in-state." The Department argues that in such instance, "[a]ny additional tax owed by the in-state taxpayer would simply result from the higher rate charged on the income by a foreign state," and "the dormant Commerce Clause does not protect interstate commerce from a succession of taxes by differing jurisdictions." *Moorman Mfg. Co.*, 437 U.S. 267; *Jefferson Lines*, 514 U.S. 175.

As stated hereinabove, even if a tax is internally consistent, it must also meet the second component of fair apportionment, i.e., external consistency. *Jefferson Lines*, 514 U.S. at 184. External consistency looks to "the economic justification for

15

the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *Id.* at 185 (citing *Goldberg*, 488 U.S. at 262). "[T]he threat of real multiple taxation (though not by literally identical statutes) may indicate a State's impermissible overreaching." *Id.*

Taxpayers argue that Act 109 fails the fair apportionment test because its tax liability does not reasonably reflect how and where Taxpayers' income is generated. Act 109 fails to fairly apportion the tax according to each state's relation to the income. Since no credit is given with respect to the taxes paid on income earned from sources in Texas, Taxpayers maintain that Act 109 fails to apportion the out-of-state income in the first instance. Not only is it not apportioned, it creates the potential for multiple taxation of the same income. We agree with Taxpayers that Act 109 fails the external consistency test.

The third prong of the *Complete Auto* test addresses whether the state tax discriminates against interstate commerce. "A State may not 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.'" *Jefferson Lines*, 514 U.S. at 197 (quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S.Ct. 357, 362 (1959)). "Thus, States are barred from discriminating against foreign enterprises competing with local business . . . and from discriminating against commercial activity occurring outside the taxing State[.]" *Id.* (citations omitted).

The Department states that there is no discrimination in this case because it has repeatedly been acknowledged by the United States Supreme Court that interstate commerce can be subject to a myriad of different taxes as it moves through the distribution chain.[14] The Department then makes the conclusory statement that

---

[14] The Department quotes the following language from *Jefferson Lines, Inc.*, 514 U.S. at 187-88:

"the imposition of Louisiana income tax and Texas franchise tax to the Taxpayers' interstate activity does not discriminate against interstate commerce or violate the dormant Commerce Clause." However, under the third prong of *Complete Auto*, the inquiry is whether the tax discriminates by disparate treatment between interstate and intrastate commerce.

Taxpayers maintain that Act 109 discriminates against interstate commerce in two ways. First, the amended language of La.R.S. 47:33(A)(4) exposes one hundred percent of the interstate income of Louisiana residents to double taxation. By virtue of their ownership in the Pass-Through Entities, which earned income was derived from sources in Texas, Taxpayers paid taxes on income from Texas sources. Additionally, since Texas has no reciprocal credit provision, Act 109 does not allow a credit to Taxpayers on their Louisiana income taxes for the income taxes they paid on the revenue earned from Texas sources. Therefore, in this case, Taxpayers are paying income tax twice on their interstate income. However, on income earned in Louisiana, Taxpayers pay only the Louisiana income tax.

---

In deriving this rule covering taxation to a buyer on sales of goods we were not, of course, oblivious to the possibility of successive taxation of related events up and down the stream of commerce, and our cases are implicit with the understanding that the Commerce Clause does not forbid the actual assessment of a succession of taxes by different States on distinct events as the same tangible object flows along. Thus, it is a truism that a sales tax to the buyer does not preclude a tax to the seller upon the income earned from a sale, and there is no constitutional trouble inherent in the imposition of a sales tax in the State of delivery to the customer, even though the State of origin of the thing sold may have assessed a property or severance tax on it. See [*McGoldrick v. Berwind-White Coal Mining Co.,* 309 U.S. 33, 53, 60 S.Ct. 388, 396]; cf. *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981) (upholding severance tax on coal mined within the taxing State). In light of this settled treatment of taxes on sales of goods and other successive taxes related through the stream of commerce, it is fair to say that because the taxable event of the consummated sale of goods has been found to be properly treated as unique, an internally consistent, conventional sales tax has long been held to be externally consistent as well.

17

Additionally, Taxpayers state that La.R.S. 47:33(A)(5) provides another provision for the double taxation of a portion of a Louisiana resident's interstate income. The amended language now provides that even if a state offers a reciprocal credit (thereby satisfying the requirement of La.R.S. 47:33(A)(4)), the amount of the credit is limited to the amount of Louisiana income tax a taxpayer would have paid if the income had been earned in Louisiana. Therefore, the effect is to discriminate against interstate commerce by twice taxing a portion of a taxpayer's out-of-state income.

We agree with Taxpayers that Act 109 results in the double taxation of interstate income as compared with the taxation of intrastate income. This disparate treatment impermissibly discriminates against interstate commerce, and it fails the third prong of the *Complete Auto* test. Our conclusion herein is supported by the reasoning and holding in *Wynne*.

As stated above, the district court found *Wynne* to be dispositive on the issue of the constitutionality of Act 109. We likewise find *Wynne* instructive and applicable herein. Not only did *Wynne* eliminate any question regarding the distinction between taxes on net and gross income, as in the instant matter, but it also involved the potential tax liability of shareholders of an S corporation and whether the Maryland tax law violated the dormant Commerce Clause.

As analyzed in *Wynne*, 135 S.Ct. 1787, Maryland imposed an income tax on its residents for income earned inside and outside Maryland, which was composed of a state income tax and a county income tax. If a Maryland resident paid income tax to another state for income earned there, Maryland allowed the taxpayer a credit against the state portion of the tax paid to the other state, but not the county portion of the tax. According to the Maryland tax scheme, income of nonresidents was also taxed in two parts. Nonresidents were required to pay the Maryland state income

18

tax on all income that was earned from sources within Maryland. Nonresidents, not subject to the county tax, were required to pay a "special nonresident tax" in lieu of the county tax. *Wynne*, 135 S.Ct. at 1792. The "special nonresident tax" was levied on income earned from sources within Maryland. Maryland did not tax the income of nonresidents earned from sources outside Maryland. *Id.*

The taxpayers in *Wynne* were Maryland residents who owned stock in an S corporation, which earned income and filed state income tax returns in multiple states. The taxpayers earned pass-through income from the S corporation. When filing their Maryland tax returns, the Wynnes claimed an income tax credit for the income taxes paid to other states. The Maryland Comptroller of the Treasury allowed the credit only for the state portion of the income tax and disallowed the credit for the county income tax.

The *Wynne* court addressed whether Maryland's taxation on income was a violation of the dormant Commerce Clause. Reasoning that the dormant Commerce Clause prohibits states from discriminating against interstate commerce by subjecting it to a higher tax that would be collected if the commerce were solely intrastate, the Court stated:

> Under our precedents, the dormant Commerce Clause precludes States from "discriminat[ing] between transactions on the basis of some interstate element." *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 332, n. 12, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977). This means, among other things, that a State "may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Armco Inc. v. Hardesty,* 467 U.S. 638, 642, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). "Nor may a State impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of 'multiple taxation.' " *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 458, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959) (citations omitted).

*Id.* at 1794. Addressing Maryland's particular tax provisions, the Court stated:

> This case involves the constitutionality of an unusual feature of Maryland's personal income tax scheme. Like many other States, Maryland taxes the income its residents earn both within and outside the State, as well as the income that nonresidents earn from sources within Maryland. But unlike most other States, Maryland does not offer its residents a full credit against the income taxes that they pay to other States. The effect of this scheme is that some of the income earned by Maryland residents outside the State is taxed twice. Maryland's scheme creates an incentive for taxpayers to opt for intrastate rather than interstate economic activity.

*Id.* at 1792.

The *Wynne* Court discussed tax schemes it had previously found to be unconstitutional[15] because they "had the potential to result in the discriminatory double taxation of income earned out of state and created a powerful incentive to engage in intrastate rather than interstate economic activity." *Id.* at 1801-02. Although it did not use the term in those decisions, the Court recognized that it "held that those schemes could be cured by taxes that satisfy what [it has] subsequently labeled the 'internal consistency' test." *Id.* at 1802 (quoting *Jefferson Lines*, 514 U.S. at 185). After conducting the internal consistency test, the United States Supreme Court concluded that "Maryland's income tax scheme fails the internal consistency test." *Id.* at 1803 (footnote omitted).

In reaching its ultimate conclusion, the *Wynne* Court explained that "[t]he critical point is that the total tax burden on interstate commerce is higher, not that Maryland may receive more or less tax revenue from a particular taxpayer." *Id.* at 1805. Further, "[t]hat Maryland's existing tax unconstitutionally discriminates against interstate commerce is enough to decide this case." *Id.* at 1806. For these

---

[15] *J.D. Adams Mfg. Co. v. Storen*, 304 U.S. 307, 58 S.Ct. 913 (1938); *Gwin, White & Prince, Inc. v. Henneford*, 305 U.S. 434, 59 S.Ct. 325 (1939); *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653, 68 S.Ct. 1260 (1948). The *Wynne* Court explained "[o]ur existing dormant Commerce Clause cases all but dictate the result reached in this case[.]" *Wynne*, 135 S.Ct. at 1794.

reasons, the Supreme Court held that Maryland's tax scheme violated the federal constitution.

Like the effect of Maryland's tax scheme, Act 109's failure to provide a credit results in the double taxation of income that is earned outside Louisiana, i.e., interstate commerce, but not intrastate income. Because the income, if earned in Louisiana, would only be taxed once, Act 109 "creates an incentive for taxpayers to opt for intrastate rather than interstate economic activity" which, pursuant to *Wynne*, is violative of the dormant Commerce Clause. *Wynne*, 135 S.Ct. at 1792. Louisiana residents who earn interstate income are forced into double taxation on all or a portion of their interstate income, whereas Louisiana residents with only intrastate income are not. This tax scheme impermissibly discriminates against interstate commerce and violates the dormant Commerce Clause of the United States Constitution. For the above reasons, we hold herein that Act 109 is unconstitutional.

## CONCLUSION

We find that the Taxpayers' payment of the franchise tax under the 2006 revisions to Texas' franchise tax provisions are income taxes paid to another state pursuant to the 2015 revisions of La.R.S. 47:33. Further, we hold that Act 109 is unconstitutional, as it is in violation of the dormant Commerce Clause of the United States Constitution.

## DECREE

For the reasons stated herein, we affirm the judgment of the district court in its entirety.

**AFFIRMED.**

21