Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,981-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CROCHET EQUIPMENT                    Plaintiff-Appellant
COMPANY, INC.

versus

LINCOLN PARISH POLICE                Defendant-Appellee
JURY

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 61,501

Honorable Bruce E. Hampton, Judge

* * * * *

HUDSON, POTTS & BERNSTEIN, LLP        Counsel for Appellant
By: Robert McCuller Baldwin
    Jason Richard Smith

NELSON, ZENTNER, SARTOR               Counsel for Appellee
& SNELLINGS, LLC
By: Douglas R. Nielsen

* * * * *

Before PITMAN, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

Crochet Equipment Company ("Crochet") appeals the trial court's denial of its motion for summary judgment against the Lincoln Parish Police Jury ("LPPJ") and the grant of the LPPJ's motion for summary judgment, denying all of Crochet's claims. Crochet filed a petition alleging the LPPJ failed to pay the amount due Crochet as agreed upon in their contract for the burning and disposal of vegetative debris and wood waste, breaching the contract between the two parties. Both parties filed motions for summary judgment seeking liability determinations in their respective favors. The trial court granted the motion filed by the LPPJ and denied that filed by Crochet, but reserved the determination of damages for trial at a later date. For the reasons expressed below, the trial court's ruling is affirmed.

## FACTS

Crochet began contracting with the LPPJ in 1980 to provide for burning and disposal via an air curtain destructor ("ACD") at the Lincoln Parish landfill. The most recent contract for services was signed in 2012; under this, Crochet agreed to provide the LPPJ with a "biomass facility" containing an ACD within the confines of the Lincoln Parish landfill. Crochet agreed the ACD would dispose of a minimum of 900 tons of wood waste per month. In exchange, the LPPJ agreed to pay Crochet $13,000 per month for the disposal of up to 12,000 tons of wood waste and vegetative debris annually.

Crochet agreed to be responsible for obtaining all permits necessary for the ACD's operation, as indicated by the following contract provision:

> Crochet agrees to be solely responsible for obtaining and
> furnishing to Police Jury all necessary permits for the operation
> of the Bio-Mass Facility as may be required by the Louisiana

Department of Environmental Quality, the Environmental Protection Agency, and any other similar state or federal regulatory agencies.

From May 2012 through August 2018, Crochet operated the ACD under the LPPJ's solid waste permit based on its location at the Lincoln Parish landfill under an air permit and an administrative order of consent, both of which were issued by the Department of Environmental Quality ("DEQ").

The contract provided strict limitations on the accumulation of wood waste and vegetative debris at the ACD site:

> At no time will more than 200 tons of wood waste be allowed to accumulate at the Bio-Mass Facility without prior approval and written corrective plan submitted to Police Jury by Crochet. All recyclable waste products created during the operations of the Bio-Mass Facility are to become the property of the Police Jury to be processed and disposed of by the Police Jury.

In the event Crochet was unable to fulfill the obligations set forth in the contract, the following provision applied:

> If Crochet is unable, for any cause, to carry out his duties under the Contract, all liability of the Police Jury to Crochet under this agreement shall cease and the Police Jury shall be free to negotiate with other contractors for the operation of said services and/or take the actions provided below for bankruptcy, default and/or breach of contract. Failure to strictly and promptly enforce these conditions shall not operate as a waiver of the rights of Police Jury, said party expressly reserving the right to always enforce or to cancel this contract, regardless of any indulgences or extensions previously granted. Failure to comply with any condition or obligation of this contract will make Crochet liable for any loss or damages sustained by Police Jury.

Additionally, the contract contained the following force majeure provision:

> Neither party is liable for failure to perform the party's obligation if such failure is a result of Acts of God (including fire, flood, earthquake, storm, hurricane, or other natural disaster), war, invasion, act of foreign enemies, hostilities (regardless of whether war is declared), civil war, rebellion, revolution, insurrection, military or usurped power or

2

confiscation, terrorist activities, nationalism, government, sanction, blockage, embargo, labor dispute, strike, lockout or interruption or failure of electricity or telephone service.

The administrative order of consent allowing Crochet to operate under the LPPJ's solid waste permit was originally issued in August 2012. Crochet was directed to return a signed copy to the DEQ in order to continue operating the ACD under the LPPJ's solid waste permit. Crochet failed to do so, and DEQ then cited Crochet in January 2014 and November 2017 for lacking the proper permits in order to operate the ACD. In August 2018, the DEQ halted Crochet's operations at the Lincoln Parish landfill and prohibited Crochet from further operations until it obtained a solid waste landfill permit for the site. At the same time, communications between Ronnie Crochet, the owner of Crochet Equipment Company, and Courtney Hall, the parish administrator, indicate a debris backlog in excess of 200 tons already existed at the ACD site. Crochet was not allowed to burn any debris from August 2018 through mid-April 2019.

The LPPJ paid Crochet $32,500 (half of the $65,000 owed under the contract) while the ACD was inoperable, with the remaining $32,500 to be used by the LPPJ to dispose of some of the accumulated debris. Scale tickets and invoices submitted on behalf of the LPPJ indicate in November 2018, Murphy Brothers Trucking Company ("Murphy Brothers") removed 687.77 tons of debris from the ACD site.

On April 25, 2019, shortly after Crochet was allowed by the DEQ to resume its regular disposal operations, a tornado hit Ruston, resulting in an additional 422.3 tons of debris being deposited at the Crochet site, with most of the tornado debris routed to an emergency site authorized by the DEQ.

3

On August 11, 2020, nearly 16 months after the DEQ shutdown ended and the tornado occurred, the LPPJ, through interim parish administrator Doug Postel ("Postel"), notified Crochet via letter of the large amount of debris present at the ACD site appearing to be in excess of 200 tons, as well as his intention to retain the services of a third-party vendor to clear the backlog. On August 27, 2020, Hurricane Laura made landfall. Around that same time, Postel hired engineers employed by the Riley Company to measure the accumulated debris, and on September 8, 2020, the Riley Company estimated the debris measured approximately 5,333 tons. Postel then retained Murphy Brothers to clear the backlog of debris and haul it to the White Oak Landfill. According to the LPPJ's scale tickets and invoices issued by Murphy Brothers, over 9,700 tons of debris were removed from Crochet's ACD site between August 25 and October 23, 2020, at a cost of $424,712. The LPPJ deducted the amount paid to Murphy Brothers from the amounts owed to Crochet under the contract, and the Crochet team remained on site and operational without pay until the contract ended.

Crochet filed suit alleging the LPPJ breached the contract between the parties when it failed to pay invoices due for August 2018 through April 2019, and August 2020 through July 2022. In its responsive pleadings, the LPPJ denied any liability for breaching the contract. Both parties then filed motions for summary judgment seeking liability determinations in their respective favors, as well as damages, and both parties also filed oppositions to the motions for summary judgment filed against them.

Crochet argued it was excused from complying with the contract's 200-ton limitation on accumulated debris because the backlog was the result of a tornado and the DEQ shutdown, which Crochet argued were covered by

4

the Act of God and government sanction provisions contained in the force majeure clause of the contract. Crochet characterized its failure to return the signed administrative order of consent to the DEQ as a clerical error, and it argued the DEQ's requirement of a solid waste permit was unexpected and unforeseeable, making its actions arbitrary and capricious. Crochet argued the LPPJ's refusal to pay the amounts owed constituted a breach of the contract, and, in fact, the LPPJ owed Crochet payment for work done.

The LPPJ made the same arguments in its motion for summary judgment and in its opposition to Crochet's motion, arguing when Crochet failed to abide by the 200-ton limit on accumulated debris, it breached the contract, and because the accumulated debris at the ACD site was in excess of the 200-ton limit, per the contract, the LPPJ was allowed to seek assistance from a third party to clear the backlog. The LPPJ further argued the contract obligated Crochet to pay the costs associated with outsourcing the debris disposal. The LPPJ also argued Crochet's reliance on the force majeure clause was misplaced as reading those provisions in the manner suggested by Crochet would render Crochet's obligations to retain and maintain all permits necessary to operate the ACD meaningless and unenforceable.

The LPPJ argued the Act of God provision and the tornado in April 2019 did not excuse Crochet's noncompliance with the contract's 200-ton accumulation limitation because the excess present in April 2019 continued to grow until LPPJ hired Murphy Brothers to clean it up some 16 months later. The LPPJ submitted an affidavit executed by Kerry Outley, superintendent for the Lincoln Parish landfill, asserting that only 422.3 tons of the debris was attributable to the tornado, as well as his deposition and

5

scale tickets from the landfill reflecting the same amount of tornado debris being brought into the landfill. The LPPJ also attached Lincoln Parish landfill summaries showing Murphy Brothers hauled off 678.77 tons of debris in November 2018, and indicating 9,866.64 tons of vegetative debris was deposited at the ACD site between April 2019 and August 2020. Additionally, the LPPJ provided estimates from the Riley Company approximating the backlog at 5,333 tons, and landfill summaries and invoices reflecting Murphy Brothers hauled 9,752.71 tons of debris from the ACD site between August 25 and October 23, 2020.

As to Crochet's reliance on the government sanction provision, the LPPJ argued this did not cover Crochet's failure to perform its obligations because the shutdown by the DEQ was the result of Crochet's own failure to obtain the permits required to operate the ACD. In support, the LPPJ attached a copy of the contract between the parties, as well as the deposition of Ronnie Crochet, which acknowledged Crochet was responsible for obtaining all permits required for the ACD's operation. The LPPJ also attached a letter from Ronnie Crochet to Courtney Hall, which acknowledged the inoperative status of the ACD, his failure to return the signed administrative order of consent to the DEQ as directed some five years prior, and the backlog in excess of 200 tons. The LPPJ asked the trial court to find Crochet responsible for breaching the contract.

In its opposition to LPPJ's motion, Crochet re-urged the arguments contained in its own motion, and in support of its opposition, attached a copy of the compliance order from the DEQ ordering Crochet to cease and desist its operations due to a lack of proper permits, a copy of the original administrative order of consent, a copy of a letter sent from Courtney Hall to

Ronnie Crochet in August 2018, and Ronnie Crochet's response to that letter wherein he acknowledged his failure to return the signed administrative order of consent as well as the backlog in excess of 200 tons.

In detailed written reasons for judgment, the trial court granted the LPPJ's motion for summary judgment and denied Crochet's. The trial court noted the backlog was at least 5,333 tons, only 422.3 tons of which were attributable to the April 25, 2019, tornado, leaving Crochet in blatant violation of the 200-ton maximum set out in the contract, even after subtracting the 422.3 tons of tornado-related debris from the total amount. The trial court found Crochet's failure to comply with the DEQ's permit requirements caused the shutdown of the ACD site, which then resulted in a large accumulation of debris at the staging area. The trial court concluded reading the government sanction provision in the manner suggested by Crochet would render its contractual obligation to obtain permits meaningless as any such failure resulting in a government shutdown would always be sheltered by the government sanction provision.

The trial court stated its ruling was only as to liability, with damages to be determined at a later trial. Crochet appealed.

**DISCUSSION**

In its first assignment of error, Crochet contends the trial court erred in denying the motion for summary judgment filed by Crochet; and in its second assignment of error, Crochet contends the district court erred in granting that filed by the LPPJ. In its third assignment of error, Crochet argues the district court erred in holding the government sanction and Act of God provisions of the contract did not apply; and in its fourth assignment of error, Crochet argues the district court erred in misapplying the rules of

7

contractual construction.  In its fifth and final assignment of error, Crochet claims the district court erred in not entering judgment against the LPPJ.

In its brief, Crochet re-urges many of the same arguments contained in its motion for summary judgment, arguing the Act of God and government sanction provisions should excuse its noncompliance with the 200-ton limitation.  Crochet argues the Act of God provision should, because of the April 2019 tornado, excuse the accumulation of debris in excess of 200 tons. Crochet similarly argues the DEQ shutdown, which resulted in a substantial accumulation of debris at the staging area, was arbitrary and capricious and exactly the sort of situation contemplated by the government sanction provision.  Crochet argues the trial court misapplied La. C.C. art. 2046, and inappropriately inquired into the meaning of the contract despite its terms being clear and unambiguous.  Crochet suggests the trial court's improper reading of the contract resulted in absurd consequences, thereby allowing the LPPJ to breach the contract, as well as incur ridiculous and unnecessary expenses it then passed on to Crochet.

Crochet contends it is owed $344,500 for the unpaid work performed at the ACD site and asks this court to vacate the summary judgment in favor of the LPPJ and grant its own motion for summary judgment.

The LPPJ contends the trial court correctly determined Crochet breached the contract and is liable for damages to the LPPJ.  The LPPJ further contends Crochet was solely responsible for obtaining the relevant operational permits for the ACD site and argues Crochet's failure to do so is not a government sanction as contemplated in the contract as Crochet's interpretation would render the permits and the maintenance and operation sections of the contract completely meaningless.

8

The LPPJ argues evidence shows the LPPJ paid to have 678.77 tons of wood waste hauled off during the shutdown, despite Crochet's assertions to the contrary, and the LPPJ contends the backlog greatly exceeded the 200-ton limit following the shutdown but prior to the tornado. Further, the LPPJ argues Crochet created and increased the stockpile when it was unable to burn for approximately seven months and failed to burn the amounts agreed upon in the contract when the DEQ allowed Crochet to resume operations, making the LPPJ's enforcement of its rights under the contract permissible. The LPPJ asks this court to affirm the trial court's ruling granting its motion for summary judgment.

Summary judgment is favored and will be granted if the evidence is sufficient to show that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219. A ruling regarding a motion for summary judgment is reviewed *de novo,* using the same criteria that govern the district court's consideration of whether a summary judgment should be granted. *Smith v. Robinson*, 18-0728 (La. 12/5/18), 265 So. 3d 740; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the

9

adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*.

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So. 2d 773; *Bloxham v. HDI-Gerling Am. Ins. Co.,* 52,177 (La. App. 2 Cir. 6/27/18), 251 So. 3d 601. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. A court must give effect to the ordinary meaning of words and may not create ambiguity where none exists. *Id.*; *Campbell v. Melton*, 01–2578 (La. 5/14/02), 817 So. 2d 69. Each provision in a contract must be interpreted in light of the other provisions so that each

is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.

When a contract may be construed from the four corners of the instrument, that interpretation is a matter of law for the court to determine. *City of Ruston v. Womack & Sons Constr. Grp., Inc.*, 55,328 (La. App. 2 Cir. 11/15/23), 374 So. 3d 311, *writ denied*, 24-00086 (La. 3/5/24), 380 So. 3d 571; *Scott v. Red River Waterway Comm'n*, 41,009 (La. App. 2 Cir. 4/12/06), 926 So. 2d 830, 834, *writ denied*, 06-1153 (La. 9/15/06), 936 So. 2d 1269; *NAB Natural Res., L.L.C. v. Willamette Indus., Inc.*, 28,555 (La. App. 2 Cir. 8/21/96), 679 So. 2d 477.

While five assignments of error are contained in Crochet's brief, the argument behind each is the same: the trial court erred in granting the LPPJ's motion for summary judgment and denying Crochet's. Because the assignments of error are so closely tied together, we will address them as one in an attempt to avoid repetitive discussions.

Crochet's contention that it provided sufficient proof of the LPPJ's liability for breaching the contract to warrant summary judgment in its favor is unsupported by the attachments submitted in support of its motion. Crochet attached a copy of the contract, which established Crochet was responsible for obtaining all permits necessary to operate the ACD, for burning a minimum of 900 tons of debris per month, with a maximum of 12,000 tons of debris burned per year, and establishing a strict limitation of 200 tons of accumulated debris at the ACD staging area. Crochet also attached in support of its motion an affidavit executed by Ronnie Crochet with attachments, as well as the depositions of Courtney Hall, Danny Young, Kerry Outley, and Doug Postel.

11

Crochet agrees it was in violation of the 200-ton limit on accumulated debris as of September 2020, and each deposition submitted by Crochet confirms this. None of the depositions or the exhibits attached establish the LPPJ in any way violated the contract between the two; and, in fact, in their respective depositions, Courtney Hall, Danny Young, Kerry Outley, and Doug Postel each acknowledged Crochet was in violation of the 200-ton limit in September 2020 when Murphy Brothers was retained to clear the backlog of debris.

Crochet argued the Act of God provision contained within the force majeure clause should excuse the accumulated debris in excess of 5,000 tons as of September 2020. However, the first Act of God to which Crochet points is the April 2019 tornado that occurred some 16 months prior and resulted only in 422.3 tons of debris being brought to the ACD staging area. The second Act of God to which Crochet points is Hurricane Laura, which occurred in August 2020. However, testimony from Kerry Outley, which Crochet attached in support of its motion, established a separate site was created for Hurricane Laura debris, and Crochet offered no proof any debris attributable to Hurricane Laura was deposited at the ACD staging area. Crochet failed to prove the contract's Act of God provision would or should excuse the estimated accumulated debris in excess of 5,000 tons.

Crochet's reliance on the government sanction provision of the contract is similarly misplaced. The provisions of a contract must be read in light of one another. La. C.C. art. 2050. In this contract, the government sanction provision cannot be read in a way that negates Crochet's contractual obligation to obtain and maintain all permits required for the ACD's operation. Further, Crochet's assertion it should be sheltered from a

government sanction it caused in failing to comply with the DEQ's permitting requirements is meritless. As the trial court stated, any failure of Crochet to comply with the terms of the contract resulting in the DEQ revoking its permits could be sheltered by the government sanction provision if the contract was read as Crochet urges it should be.

For these reasons, Crochet's assignments of error pertaining to the trial court's alleged mistake in failing to grant Crochet's motion for summary judgment, improper interpretation of the Act of God and government sanction provisions within the force majeure clause, and misapplication of the rules of contractual construction lack merit.

We turn to the LPPJ's motion for summary judgment. Unlike Crochet, as the nonmoving party, the LPPJ needed only to point out the absence of factual support for one or more elements essential to Crochet's claim. La. C.C.P. art. 966(D)(1). When viewed collectively, the evidence submitted in support of LPPJ's arguments does prove a lack of factual support for Crochet's claims. The LPPJ attached a copy of the contract between the parties. The LPPJ also attached the deposition of Ronnie Crochet, who acknowledged the excessive accumulation of debris at the ACD site as well as his failure to return the signed administrative order of consent to the DEQ as directed. The LPPJ also attached the deposition of Kerry Outley, the landfill summaries and scale tickets showing amounts deposited at the ACD site, the deposition of Courtney Hall, invoices submitted to the LPPJ by Murphy Brothers for debris hauled from the ACD site, letters from Mr. Hall to Ronnie Crochet, the deposition of Ronnie Crochet, letters from Ronnie Crochet to Mr. Hall and to the LPPJ, the deposition of Danny Young, the deposition of Robert Myers with the Riley

13

Company, and the Riley Company's measurement of the accumulated debris performed in September 2020, estimated to be approximately 5,333 tons.

The documents listed above and attached in support of the LPPJ's motion proved the 200-ton limitation on accumulated debris, Crochet's obligation to obtain all required permits to operate the ACD, and Crochet's obligation to burn a minimum of 900 tons of debris per month, with a maximum of 12,000 tons per year, and the LPPJ's obligation to pay Crochet $13,000 per month for those services. The LPPJ established a backlog of at least 5,333 tons, and at most 9,752.71 tons, in September 2020, which far exceeded the 200-ton limitation. Further, the LPPJ established only 422.3 tons of tornado debris were ever brought into the ACD staging area, and it established a separate site was approved for debris associated with Hurricane Laura. The LPPJ additionally established the contract permitted it to retain the services of a third-party vendor to remediate any excessive backlog, as well as Crochet's obligation to pay for any such remedial services.

Once the LPPJ pointed out the absence of factual support for Crochet's claims, the burden then shifted to Crochet to produce factual support sufficient to establish the existence of a genuine issue of material fact or that LPPJ was not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). In its opposition to the LPPJ's motion, Crochet re-urged the same arguments raised in its motion, and as further support, attached a copy of the compliance order from the DEQ, as well as a copy of the administrative order of consent (which Ronnie Crochet acknowledged several times he did not sign and return to the DEQ), a letter from Courtney Hall to Ronnie Crochet from August 2018, wherein Mr. Hall discusses the DEQ's shutdown of the ACD site due to a lack of permits, and a copy of

14

Ronnie Crochet's response to Mr. Hall's letter, acknowledging his failure to return the signed administrative order of consent, agreeing the contract limited the backlog to 200 tons, and noting the backlog was in excess of the 200-ton limitation. None of these items proved the existence of a genuine issue of material fact, nor did they prove the LPPJ was not entitled to summary judgment as a matter of law.

For these reasons, the assignments of error contending the trial court erroneously granted the LPPJ's motion for summary judgment and failed to enter judgment against the LPPJ are without merit.

## CONCLUSION

For the reasons expressed, the trial court's ruling is affirmed, and this matter is remanded to the district court for further proceedings consistent with this opinion. All costs are to be paid by Crochet Equipment Company.

**AFFIRMED.**